UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-CV-63108-RAR

HANK HANEY and
HANK HANEY MEDIA, LLC,

       Plaintiffs,

  vs.

PGA TOUR, INC.,

       Defendant.

_____/

### DEFENDANT PGA TOUR, INC.'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, PGA TOUR, Inc. (hereafter, "PGA TOUR"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Complaint of Plaintiffs, Hank Haney ("Haney") and Hank Haney Media, LLC ("Haney Media") (collectively, the "Plaintiffs"), with prejudice, for failure to state a claim as a matter of law.  In support of this motion, PGA TOUR states as follows:

### INTRODUCTION

Plaintiffs' claims against PGA TOUR arise from Haney's own actions when he made several offensive comments of a racist, xenophobic and sexist nature about the Ladies Professional Golf Association ("LPGA") and its golfers on Sirius XM Radio, Inc.'s ("Sirius XM") channel branded as *PGA TOUR Radio*.  Vociferous public backlash erupted in response to Haney's on-air

1

comments,[1] and Sirius XM thereafter suspended him.  Later, Sirius XM terminated its contract with Plaintiffs.[2]

Now, Plaintiffs bring two claims—tortious interference with contract (Count I), and tortious interference with business relations (Count II)—against PGA TOUR.  For Count I, plaintiff must plead: (1) the existence of a contract that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the contract; (3) the defendant's intentional and unjustified interference with the contractual relationship; and (4) damages to the plaintiff.  *See, e.g.*, *Mattocks v. Black Entertainment Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014) (applying Florida law)  For Count II, Plaintiff must plead essentially the same elements as Count I.  *See, e.g.*, *St. John's River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 504 (Fla. 5th DCA 2001) (stating that the "judicial trend seems to increasingly meld the two

---

[1] Haney's comments were uniformly panned and deemed offensive by many organizations and individuals as reflected in the publicly available media.  *See* Sally Jenkins, *Hank Haney swung and missed with his sexist, xenophobic laziness. Ignore him.*, WASH. POST, June 3, 2019; Christine Brennan, *If Hank Haney isn't fired from his radio job, golf's leaders are condoning racism, sexism*, USA TODAY, May 29, 2019; Josh Berlow, *Michelle Wie blasts Hank Haney: 'Racism and sexism are no laughing matter'*, GOLF.COM, May 29, 2019.  Further, several LPGA golfers expressed their outrage at Haney's offensive comments.  For example, Michelle Wie tweeted several messages that were retweeted by fellow LPGA members, when she wrote statements such as, "As a Korean American female golfer, these comments that @HankHaney made disappoint and anger me on so many different levels. Racism and sexism are no laughing matter Hank . . . shame on you. I don't ever do this, but this must be called out."  *See* Michelle Wie (@MichelleWieWest), TWITTER (May 29, 2019, 8:33 AM).  Although these news stories and reactions extend beyond the four corners of the Complaint, this information provides greater context illustrating that PGA TOUR was far from alone in its disgust with Haney's remarks.

[2] Sirius XM operated within its contractual rights when terminating the contract.  The contract was terminable at will.  Section 6(b) of the contract attached to Plaintiffs' Complaint as Exhibit A demonstrates that the contract was terminable at will.  Section 6(b) states "Sirius XM may terminate this Agreement with no liability to the Company and/or Artist other than payment of amounts accrued and owing: (i) without reason upon thirty (30) days' prior written notice; or (ii) immediately without notice in the event that . . . (B) Artist engages in any behavior that disparages Sirius XM or satellite radio, brings Company or Artist in public disrepute, contempt, scandal, or ridicule or that otherwise reflects unfavorably upon the reputation or the moral or ethical standards of Sirius XM."

2

torts into one by blurring the lines of demarcation").  Courts require plaintiffs to plead: (1) the existence of a business relationship that affords the plaintiffs existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damages to the plaintiffs.  *See, e.g.*, *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223 (Fla. 3d DCA 1980) (collapsing the claim into three elements, but stating the same requirements); *Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

Both claims should be dismissed for failure to state a cause of action because Plaintiffs fail to allege the requisite facts to plead either claim.  Additionally, even taking all of Plaintiffs' allegations as true, as this Court must do, both claims should be dismissed because Plaintiffs fail to allege facts demonstrating PGA TOUR *unjustifiably* interfered in Plaintiffs' contract or business relationship with Sirius XM.

## STATEMENT OF ALLEGED FACTS[3]

1. On or about November 30, 2017, Plaintiffs allege that they entered into a binding contract with Sirius XM for Haney to host a radio program on Sirius XM's branded *PGA TOUR Radio* channel, which contract was set to expire on February 15, 2021, unless terminated earlier upon thirty days' written notice for any reason or immediately if Haney engaged in behavior that reflected unfavorably upon the reputation or the moral or ethical standards of Sirius XM.  (Dkt. No. 1, Compl. at ¶ 8-9 and Exhibit A Attached to Complaint, Section (6)(b)).

---

[3] For the purposes of this Motion to Dismiss, PGA TOUR has relied on the allegations within the Complaint, but such reliance should not be construed as an indication that PGA TOUR agrees with the allegations.

2.      On or about May 29, 2019, while broadcasting on the *PGA TOUR Radio* channel, Haney and a co-host discussed the U.S. Women's Open and LPGA players participating at the Open.  (*Id.* at ¶ 16-22).

3.      Haney made several comments about LPGA and its players.  (*Id.*)

4.      During the conversation, Haney's co-host stated "This week is the 74th U.S. Women's Open, Hank," and Haney replied, "Oh it is? I'm gonna predict a Korean."  (*Id.* ¶¶ 17-18).

5.      In the same conversation, Haney further stated "I couldn't name you six players on the LPGA Tour.  Maybe I could.  Well . . . I'd go with Lee.  If I didn't have to name a first name, I'd get a bunch of them right."  (*Id.* at ¶ 21).

6.      While Haney was still on the air, Haney learned that people on the internet, and especially Twitter, were offended by his remarks.  (*Id.* at ¶ 25).

7.      In response to the influx of criticism, Haney initially apologized during the radio broadcast.  Later that same day, Haney issued a formal written apology acknowledging that he "made some comments about women's professional golf and its players **that were insensitive and that I regret**.  In an effort to make a point about the overwhelming success of Korean players on the tour **I offended people** and I am sorry."  (*Id.* at ¶¶ 26-27) (emphasis added).

8.      On or about May 30, 2019, Sirius XM temporarily suspended Haney when it issued a joint statement with PGA Tour stating that "At the PGA TOUR's instruction Mr. Haney has been suspended from the SiriusXM PGA TOUR Radio channel.  SiriusXM is reviewing his status on Sirius XM going forward."  (*Id.* at ¶ 39).

9.      Plaintiffs vaguely allege that PGA TOUR exerted "unusually strong pressure on Sirius XM" to temporarily suspend Haney from hosting a program on the Sirius XM *PGA TOUR*

4839-1777-3489

Radio channel.  (*Id.* at ¶ 38).  Notably, Plaintiffs do not allege/plead any *facts* connecting this allegation of "pressure" to suspend Haney to their other unsupported allegation that PGA TOUR caused Sirius XM to terminate Haney's contract. To the contrary, as reflected in the joint statement by PGA TOUR and Sirius XM, Sirius XM that stated that it would continue to "review [Haney's] status on Sirius XM going forward."  (*Id.* at ¶ 39).

10.     Plaintiffs—again nebulously—allege that PGA TOUR "has long attempted to disrupt and interfere with Haney's business" since 2012 and provide several unsubstantiated allegations about *prior* instances when PGA TOUR supposedly "pressured" or "influenced" *other entities* to disrupt Plaintiffs' business relationships.  (*Id.* at ¶¶ 29-35 (under section labeled "PGA TOUR's Past Interference with Haney's Business")).

11.     Plaintiffs allege "the PGA TOUR has been working to ingratiate itself with the LPGA.  This sought-after partnership in part is so the PGA TOUR can continue to monopolize all of professional golf.  As such, the PGA TOUR has the motive to attack anyone it perceives is damaging the LPGA Brand."  (*Id.* at ¶ 36).[4]

12.     Plaintiffs further conclusorily allege that PGA TOUR continued its "vendetta against Haney," and "pressured Sirius XM to terminate the Agreement and Plaintiffs' business relationship with Sirius XM."  (*Id.* at ¶ 40).[5]

---

[4]  As reflected in the publicly available materials, PGA TOUR—currently and historically—holds a genuine, strategic alliance with the LPGA in an effort to grow the game of golf and to continue to diversify golfers/golf fans.  *See PGA Tour and LPGA Announce Strategic Alliance Agreement*, LPGA, March 4, 2016; *PGA TOUR, LPGA, and Topgolf announce strategic alliance focused on growing the game, enhancing golf experience*, PGATOUR.COM, May 10, 2016.

[5]  Plaintiffs make several statements allegedly documenting PGA TOUR's "vendetta" against Haney originating in 2012.  (Compl. ¶¶ 29-36, 40).  Yet, if PGA TOUR actually possessed this vendetta as Plaintiffs allege, then it seems inapposite that PGA TOUR would not have protested initially and insisted SiriusXM refuse to air his program on PGA TOUR Radio when

## **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]  Although this pleading standard does not require overly detailed factual allegations, it "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  A complaint cannot rest on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and alleging "[t]he mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (emphasis added). In other words, "[w]hile legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; s*ee also Sinaltrainal*, 578 F.3d at 1260 ("'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations").

Practically, following *Twombly* and *Iqbal*, federal courts considering motions to dismiss should apply a "two-pronged approach:" 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their

---

Sirius XM entered into a multi-year contract in 2017 with Haney allowing him to broadcast on PGA TOUR's branded radio channel.  Accordingly, not only do Plaintiffs not have any support for this unsubstantiated allegation, but the facts belie such an assertion.

[6] In *Twombly*, the Supreme Court rejected the oft-quoted proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 563 (holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," and that the phrase "has earned its retirement"). *See also Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289-90 (11th Cir. 2010) (recognizing that *Twombly* identified a new "plausibility standard").

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010), *citing Iqbal*, 129 S. Ct. at 1950.  In doing so, courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the claimant would ask the court to infer.  *Id.*  (*citing Iqbal*, 129 S. Ct. at 1951-52 and *Twombly*, 550 U.S. at 567).

Plaintiffs' Complaint is riddled with conclusory statements and utterly lacking in factual support for either of Plaintiffs' claims, and therefore, must be dismissed.

## INCORPORATED MEMORANDUM OF LAW AND ARGUMENT

**I.**  **Plaintiffs Assert Only Conclusory Allegations For Both Claims, Which Fails To Meet The Applicable Pleading Standards.**

Plaintiffs' Complaint contains only conclusory statements and lacks factual support for how PGA TOUR unjustifiably interfered with Plaintiffs' business relationship and contract with Sirius XM.  Both causes of action require Plaintiffs to allege facts showing PGA TOUR's intentional and unjustified interference with the relationship and/or contract.  *See, e.g.*, *Ethyl Corp.*, 386 So. 2d at 1223; *Int'l Sales & Service, Inc.*, 262 F.3d at 1154; *Reyes v. Foreclosure Asset Sales and Transfer P'ship*, No. 13-22829, 2014 WL 12623071, at *9 (S.D. Fla. Mar. 5, 2014).

All of the allegations regarding PGA TOUR's "vendetta" against Plaintiffs and PGA TOUR's previous "pressure" placed on other entities are merely hyperbole aimed to mask undefined and unsubstantiated behavior Plaintiffs claim PGA TOUR engaged in.  Put simply, Plaintiffs' allegations regarding PGA TOUR's prior conduct are uncorroborated and totally conclusory.  Further, these legal conclusions are ultimately irrelevant in pleading that PGA TOUR allegedly interfered with Plaintiffs' relationship and contract *with Sirius XM* as they do not show any actions taken by PGA TOUR to have "intimidated, enticed and threatened" Sirius XM

4839-1777-3489

specifically or any other company such as Callaway with whom Plaintiffs allege they had a "collaboration agreement".[7] (Compl. ¶¶ 1, 42-43).

Under the pleading standard set out above, reading the Complaint without these conclusory allegations leaves only a single allegation wherein Plaintiffs assert an action PGA TOUR took to interfere with Plaintiffs' contract and business relationship with Sirius XM – that "the PGA TOUR pressured Sirius XM to terminate the Contract and Plaintiffs' business relationship." (*See* Compl. ¶ 40). Yet, Plaintiffs fail to assert any facts expressing how or in what manner PGA TOUR "pressured" Sirius XM to terminate their contract and business relationship. Rather, Plaintiffs again merely conclude that this "pressure" occurred without any allegation about PGA TOUR's communications with Sirius XM about Haney (if any). Plaintiffs state that PGA TOUR instructed Sirius XM to *temporarily suspend* Haney from the radio station after his insensitive comments. (Compl. ¶ 39). However, this allegation shows only that PGA TOUR's statements related to Haney's temporary suspension. This allegation does nothing to lend support to the suggestion Sirius XM later *terminated* its contract and business relationship with Plaintiffs based solely on PGA TOUR's clear disapproval of Haney's comments. It also ignores the overwhelming pressure that Sirius XM received from numerous people, companies, and other golf organizations who were likewise offended by Plaintiffs' comments.[8] Further, Plaintiffs do not and cannot allege anything

---

[7] To the extent Plaintiffs are attempting to include unsubstantiated allegations of PGA TOUR interference with PGA TOUR Superstores in 2012 as part of their tortious interference claims, such claims are time-barred. *See* FLA. STAT. § 95.11(3)(o).

[8] In fact, a few days after Haney's suspension, Haney maintained he was right to make his offensive remarks, stating, "If you asked me again my answer would be the same but worded more carefully." *See* Des Bieler, *Suspended Hank Haney claims vindication after Jeongeun Lee6 wins U.S. Women's Open*, WASH. POST, June 3, 2019; Nick Menta, *Haney defends his 'prediction' as Lee6 marches to victory*, NBC.COM, June 2, 2019. The outrage that resulted from Haney doubling down on his original comments while suspended is a far more plausible reason for the termination by Sirius XM.

4839-1777-3489

that indicates that the decision to terminate Haney was not Sirius XM's own decision based upon its review of the incident and/or other factors.

Importantly, Plaintiffs plead in paragraph 39 of the Complaint that Sirius XM announced that it would review "his status on Sirius XM going forward."  Notably, this allegation regarding the termination of Plaintiffs' business relationship and contract concerns Sirius XM stating that it alone will review its relationship with Haney, with no mention or reference to PGA TOUR.  As such, the Complaint, without any support, simply concludes that the PGA TOUR's alleged involvement in Haney's initial discipline—the temporary suspension from the station—further resulted in Sirius XM's later termination of its contract and relationship with Plaintiffs.

Therefore, under the applicable pleading standard, the conclusory allegation of "pressure" by PGA TOUR to terminate Plaintiffs' agreement with Sirius XM does not meet the pleading requirements of either of Plaintiffs' claims.  As such, Plaintiffs' Complaint should be dismissed pursuant to Federal Civil Procedure Rule 12(b)(6).

## II.     Alternatively, Taking All Allegations as Sufficient and True, Plaintiffs Still Fail to Allege Facts Establishing that PGA TOUR Unjustifiably Interfered With Plaintiffs' Business Relationship or Contract

To survive a Motion to Dismiss, Plaintiffs must allege facts showing that PGA TOUR *unjustifiably* interfered with Plaintiffs' contract and/or business relationship.  Therefore, Plaintiffs needed to assert that PGA TOUR was a stranger to the business relationship and/or contract between Plaintiffs and Sirius XM, and that PGA TOUR had no justifiable reason for interfering. The Complaint alleges no such facts.  Rather, even when taking all allegations as sufficient and true, Plaintiffs allege facts showing only that PGA TOUR *justifiably* interfered with the business relationship and contract, which is not actionable under Florida law and supports dismissal of the Complaint.

A person or entity is entitled to interfere when it is not a stranger to the business relationship and has a "beneficial or economic interest in, or control, over that relationship," including "when a defendant [has a] supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Walter v. Jet Aviation Flight Services, Inc.*, No. 9:16-CV-81238, 2017 WL 3237375, at *8 (S.D. Fla. 2017) (citing *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014)). Additionally, actions to protect trademarks generally are not actionable. *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011). Here, PGA TOUR clearly possesses a supervisory and financial interest in Plaintiffs' relationship and contract with Sirius XM. In paragraph 1 of the Complaint, Plaintiffs assert that Haney operated his radio broadcast on *Sirius XM's PGA TOUR Radio Station*. PGA TOUR's name, branding and most of all, reputation are directly associated with, and tied to, Plaintiffs' contract and relationship with Sirius XM because Haney's show is distributed through PGA TOUR's *branded* channel. Indeed, the contract attached as Exhibit A to the Complaint contemplates that the show will be aired on Sirius XM's *PGA TOUR* Radio Station. As such, on the face of the Complaint, PGA TOUR was not a stranger to Plaintiffs' business relationship with Sirius XM, and held a supervisory interest over that business relationship giving rise to the right to justifiably interfere in it.

Plaintiffs' own allegations and pleadings make it clear that PGA TOUR possessed a justifiable reason to interfere as it sought to protect its economic interest. Florida law has long recognized that a claim for tortious interference is justified when the interferer acts to protect its own economic and business interests. *See Ethyl Corp.*, 386 So. 2d at 1224-25. In paragraph 36 of the Complaint, Plaintiffs state "the PGA TOUR has been working to ingratiate itself with the LPGA. This sought-after partnership in part is so the PGA TOUR can continue to monopolize all

of professional golf.  As such, the PGA TOUR has the motive to attack anyone it perceives is damaging the LPGA Brand."  Aside from the offensive characterization of PGA TOUR's efforts to grow the game of golf for both men and women professional golfers and how it reflects a complete lack of understanding of PGA TOUR's relationship with the LPGA, this allegation is an outright acknowledgement that PGA TOUR possesses a financial interest in protecting its relationship with the LPGA.  In this allegation, Plaintiffs state that PGA TOUR sought to protect its economic interest—to retain its prominence in the professional golfing industry—which Florida law recognizes as a justifiable reason for interference.

Notably, Plaintiffs do not allege that PGA TOUR interfered by way of any improper means, including actions like "physical violence, misrepresentations, intimidation, illegal or conspiratorial conduct, or the threat of such conduct."  *See Reyes*, 2014 WL 12623071, at *10.  Interference by improper means is disallowed under Florida law, even when protecting an economic interest.  *Id.* However, because Plaintiffs make no such claim, Plaintiffs plead facts showing only that PGA TOUR justifiably interfered with Plaintiffs' contractual and business relationship to protect its own economic interest in cultivating a relationship with the LPGA.  As a result, Plaintiffs fail to plead facts giving rise to either cause of action; and in fact, the Complaint only shows that PGA TOUR acted lawfully.  For this reason, too, Plaintiffs' Complaint must be dismissed.

## CONCLUSION

Based on the foregoing, Plaintiffs' Complaint should be dismissed for two overarching reasons.  First, Plaintiffs make only conclusory allegations connecting PGA TOUR to Sirius XM's decision to terminate its contract and relationship with Plaintiffs permanently.  Therefore, Plaintiffs fail to allege facts meeting the applicable pleading standard.  Second, even if the allegations meet the pleading standard, Plaintiffs still allege facts showing only that PGA TOUR

11

*justifiably* interfered in Plaintiffs' contract and relationship with Sirius XM, which is not actionable under Florida law.  In sum, Plaintiffs refuse to take ownership of Haney's own ignorant and ill-advised comments and the resulting ramifications therefrom and instead have filed this suit, which is nothing more than an improper fishing expedition to try to deflect blame elsewhere. Accordingly, this lawsuit should be dismissed with prejudice.

**WHEREFORE**, Defendant PGA TOUR respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, and enter such other and further relief as this Court deems just and proper.

Dated: January 17, 2020

Respectfully submitted,

/s/ *William E. Davis*
William E. Davis
Florida Bar No. 191680
wdavis@foley.com
Angelica L. Novick
Florida Bar No. 105069
anovick@foley.com
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131-1832
Telephone: (305) 482-8400
Facsimile: (305) 482-8600

4839-1777-3489

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel listed on the attached Service List.

/s/ <i>William E. Davis</i>      <br>William E. Davis

4839-1777-3489

<u>SERVICE LIST</u>
Hank Haney and Hank Haney Media, LLC v. PGA TOUR, Inc.
<u>Case No. 0:19-cv-63108-rar</u>

**Attorneys for Plaintiffs:**
**Riley W. Cirulnick**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
Fax: 954-462-4300
rcirulnick@rprslaw.com


**Peter R. Ginsberg**
Sullivan & Worcester LLP
1633 Broadway, 32nd Floor
New York, NY 10019
(212) 660-3059
prginsberg@sullivanlaw.com


**Ryan M. Rosenblatt**
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800
rrosenblatt@sullivanlaw.com


**Arthur Halsey Rice**
Rice Pugatch Robinson & Schiller
101 NE 3 Avenue
Suite 1800
Fort Lauderdale, FL 33301
305-379-3121
Fax: 305-379-4119
arice.ecf@rprslaw.com

4839-1777-3489