UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-CV-63108-RAR

HANK HANEY and
HANK HANEY MEDIA, LLC,

      Plaintiffs,

   vs.

PGA TOUR, INC.,

      Defendant.

_____/

**<u>DEFENDANT PGA TOUR, INC.'S MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ........................................................................................................... 3

MEMORANDUM OF LAW ......................................................................................................... 5

I.       SUMMARY JUDGMENT STANDARD ........................................................................... 5

II.      PGA TOUR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TORTIOUS INTERFERENCE WITH CONTRACT CLAIM (COUNT I). ..................... 6

III.     PGA TOUR IS OTHERWISE ENTITLED TO SUMMARY JUDGMENT ON BOTH OF PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT PGA TOUR'S ALLEGED INTERFERENCE WAS UNJUSTIFIED. ..................................................................................................................... 9

         A.      PGA TOUR's Actions were Justified to Protect its Economic and Business Interests in its Brand, Which is Closely Associated with SiriusXM PGA TOUR Radio. ................................................................................................. 10

         B.      PGA TOUR's Actions Were Also Justified to Protect its Business Relationship with the LPGA. ............................................................................... 13

         C.      PGA TOUR's Actions Were Consistent With its Rights Under its License Agreement with SiriusXM, and PGA TOUR was Not a Stranger to Plaintiffs' Relationship with SiriusXM. ............................................................... 13

         D.      PGA TOUR Did Not Act with Malice, Nor Did PGA TOUR Employ Improper Means. ................................................................................................ 16

CONCLUSION ............................................................................................................................. 19

4829-8479-0498

# TABLE OF CITATIONS

**Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................ 6

*Banks Hardwoods Fla., LLC v. Maderas Iglesias, S.A.*,
  No. 08-23497-CIV, 2009 WL 3446736 (S.D. Fla. Oct. 20, 2009) ................................ 6, 7, 8, 9

*Barco Holdings, LLC v. Terminal Inv. Corp.*,
  967 So. 2d 281 (Fla. 3d DCA 2007) ....................................................... 14

*Black v. Advanced Neuromodulation Sys., Inc.*,
  No. 4:11cv539-WS, 2014 WL 1303656 (N.D. Fla. Mar. 27, 2014) ........................... 8

*Brooks v. CSX Transp., Inc.*,
  555 F. App'x 878 (11th Cir. 2014) ....................................................... 6

*Carlwood Safety, Inc. v. Wesco Distrib., Inc.*,
  446 F. Supp. 3d 970 (M.D. Fla. 2020) .................................................. 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ....................................................... 6, 8, 12

*Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla. Inc.*,
  832 So. 2d 810 (Fla. 2d DCA 2002) ....................................................... 7

*Compass iTech, LLC v. eVestment All., LLC*,
  No. 14-81241-CIV-MARRA\MATTHEWMAN,
  2016 WL 10519027 (S.D. Fla. June 24, 2016) ....................................... 18

*Ernie Ford Haire, Inc. v. Ford Motor Co.*,
  260 F.3d 1285 (11th Cir. 2001) ....................................................... 16

*Ethyl Corp. v. Balter*,
  386 So. 2d 1220 (Fla. 3d DCA 1980) ....................................... 9, 12, 13, 17

*Farah v. Canada*,
  740 So. 2d 560 (Fla. 5th DCA 1999) ....................................................... 7

*Futuristic Fences, Inc. v. Illusion Fence Corp.*,
  558 F. Supp. 2d 1270 (S.D. Fla. 2008) ....................................................... 17

*Genet Co. v. Anheuser-Busch, Inc.*,
  498 So. 2d 683 (Fla. 3d DCA 1986) ....................................................... 10

4829-8479-0498

*Hager v. Venice Hosp., Inc.*,
    944 F. Supp. 1530 (M.D. Fla. 1996) ................................................................. 8

*Hamilton v. Suntrust Mortg., Inc.*,
    6 F. Supp. 3d 1312 (S.D. Fla. 2014) ................................................................. 9

*Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*,
    262 F.3d 1152 (11th Cir. 2001) ....................................................................... 9

*KMS Rest. Corp. v. Wendy's Int'l, Inc.*,
    361 F.3d 1321 (11th Cir. 2004) ..................................................................... 17

*Macuba v. Deboer*,
    193 F.3d 1316 (11th Cir. 1999) ..................................................................... 17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................... 6

*Mattocks v. Black Ent. Television LLC*,
    43 F. Supp. 3d 1311 (S.D. Fla. 2014) ..................................................... passim

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
    235 F. Supp. 2d 1269 (M.D. Fla. 2002) ................................................. 12, 13

*Networkip, LLC v. Spread Enters., Inc.*,
    922 So. 2d 355 (Fla. 3d DCA 2006) ...................................................... 10, 14

*Nimbus Tech., Inc. v. SunnData Prods., Inc.*,
    484 F.3d 1305 (11th Cir. 2007) ..................................................................... 15

*Palm Beach Cty. Health Care Dist. v. Pro. Med. Educ., Inc.*,
    13 So. 3d 1090 (Fla. 4th DCA 2009) ..................................................... 14, 15

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
    No. 09-61490-Civ, 2011 WL 2174012 (S.D. Fla. June 2, 2011) ............... 12, 13

*Raney v. Vinson Guard Serv., Inc.*,
    120 F.3d 1192 (11th Cir. 1997) ....................................................................... 6

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*,
    514 F. Supp. 2d 1334 (S.D. Fla. 2007) ......................................................... 18

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
    742 So. 2d 381 (Fla. 4th DCA 1999) ............................................................ 14

*St. John's Water Mgmt. Distr. v. Fernberg Geological Servs., Inc.*,
    784 So. 2d 500 (Fla. 5th DCA 2001) .............................................................. 9

iii

*Textron Fin. Corp. v. RV Having Fun Yet, Inc.*,
    No.: 3:09-cv-2-J-34TEM, 2011 WL 13176212 (M.D. Fla. Aug. 3, 2011) .............................. 14

*Walker v. Darby*,
    911 F.2d 1573 (11th Cir. 1990) ................................................................................. 6

*Walter v. Jet Aviation Flight Servs., Inc.*,
    No. 9:16-CV-81238, 2017 WL 3237375 (S.D. Fla. July 31, 2017) ................................... 9, 15

*Weisman v. S. Wine & Spirits of Am., Inc.*,
    297 So. 3d 646 (Fla. 4th DCA 2020) ........................................................................ 18

## Rules

Fed. R. Civ. P. 56 ....................................................................................................... 1
Fed. R. Civ. P. 56(a) .................................................................................................. 5
Fed. R. Civ. P. 56(c) .................................................................................................. 5
Fed. R. Civ. P. 56(e) .................................................................................................. 6

Defendant PGA TOUR, INC. (hereafter, "PGA TOUR"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, moves for summary judgment on all claims in the Complaint brought by Plaintiffs, HANK HANEY (hereafter, "Haney") and HANK HANEY MEDIA, LLC (hereafter, "HHM").  In support thereof, PGA TOUR states as follows.[1]

## PRELIMINARY STATEMENT

After over five years broadcasting on PGA TOUR's branded radio station, during  his May 29, 2019 broadcast, Haney made a series of offensive comments related to that year's upcoming U.S. Women's Open - including comments about several of the female golfers slated to participate in that major event.  After senior executives at Callaway Golf informed Haney's agent of the immediate backlash on social media, Haney's agent instructed him to apologize.  At the end of the broadcast, Haney stated, "I apologize if that offended people."  Later that day, Sirius XM Radio, Inc. ("SiriusXM") helped Haney draft a written apology Haney issued via Twitter that described his statements as insensitive.

Plaintiffs cannot dispute that Haney's on-air comments were met with a swift and intense negative public reaction, including from several Ladies Professional Golf Association (the "LPGA") players and other prominent figures in the golf world.  Major publications published scathing editorials condemning Haney's comments that associated PGA TOUR's brand with Haney's broadcast.  The next day, faced with mounting negative public commentary in response to Haney's comments, PGA TOUR Commissioner Jay Monahan contacted Scott Greenstein, SiriusXM President and Chief Content Officer.  Later on May 30, 2019, SiriusXM suspended Haney from broadcasting on SiriusXM's PGA TOUR-branded station, and SiriusXM and PGA

---

[1] PGA TOUR's Statement of Undisputed Material Facts will be cited as "SOF ¶ ___."

TOUR issued a joint public statement regarding Haney's suspension.  Over a month later, and with no PGA TOUR involvement, Haney and SiriusXM entered into a settlement agreement that formally ended their contractual and business relationship.  At no point did Plaintiffs accuse SiriusXM of breaching any term of the contract governing their relationship.

Plaintiffs then filed this lawsuit, claiming that PGA TOUR tortiously interfered with their contractual and business relationships with SiriusXM after Haney's May 29, 2019, broadcast. Plaintiffs allege that PGA TOUR was motivated to do so by its "long-standing animus towards Haney" stemming from PGA TOUR's purported "desire to settle an old score" relating to Tiger Woods and the book Haney published in 2012 about his tenure as Woods' swing coach.  Plaintiffs also allege that PGA TOUR pursued its vendetta against Haney over the years by interfering with several of his business endeavors, leading up to PGA TOUR's alleged interference with Plaintiffs' relationship with SiriusXM in 2019.  Instead of substantiating Plaintiffs' allegations, however, discovery in this case—including Plaintiffs' own records and testimony—yielded no evidence supporting Plaintiffs' claims.

As discussed more fully below, the factual record in this case demonstrates that Haney broadcast his show on a SiriusXM station emblazoned with PGA TOUR's trademark and closely associated with PGA TOUR's public brand.  The factual record also shows that PGA TOUR has indisputable rights in its intellectual property and brand's association with that station, that SiriusXM had affirmative obligations to ensure that no programming detrimental to PGA TOUR aired on that station, and that PGA TOUR was fully justified in acting to protect its financial and business interests as associated with that branded radio station.  The factual record also shows that PGA TOUR has a genuine, strategic alliance with the LPGA, and that PGA TOUR was justified in acting to protect that relationship in response to the comments Haney made during his May 29,

4829-8479-0498

2019, broadcast.   For these reasons, and the additional reasons discussed below, Plaintiffs will be unable to make a factual showing sufficient to establish each element of their tortious interference claims.   This Court should therefore grant PGA TOUR summary judgment on all of Plaintiffs' claims.

## FACTUAL BACKGROUND

PGA TOUR and SiriusXM have a business relationship dedicated to broadcasting golf-related programming, including PGA TOUR tournament coverage, on a PGA TOUR-branded station called "SiriusXM PGA TOUR Radio."   (SOF ¶ 1.)   This relationship and branding as a PGA TOUR-branded radio station is reflected in the License Agreement between SiriusXM and PGA TOUR, the operative version of which is effective as of February 15, 2018 (the "License Agreement").   (SOF ¶ 2.)   Pursuant to the License Agreement, in exchange for the ability to use PGA TOUR's intellectual property, including its trademarks, in connection with SiriusXM PGA TOUR Radio, SiriusXM provided PGA TOUR with the right of consent to all programming aired on that channel.   (SOF ¶¶ 3-6.)

Haney began broadcasting a show called *Hank Haney Golf Radio* on SiriusXM PGA TOUR Radio in or about 2013.   (SOF ¶ 9.)   During the relevant time period, Haney broadcasted *Hank Haney Golf Radio* pursuant to a Letter Agreement with SiriusXM (hereafter, the "Haney Agreement") (SOF ¶ 10.)   The Haney Agreement specifically provided that *Hank Haney Golf Radio* would air on SiriusXM PGA TOUR Radio.   (SOF ¶ 11.)   The Haney Agreement also allowed SiriusXM to terminate the Haney Agreement without notice if certain events occurred, including if Haney "engaged in any behavior that…br[ought Haney or HHM] into public disrepute, contempt, scandal, or ridicule…"   (SOF ¶ 12.)

PGA TOUR and the LPGA are parties to a strategic alliance based in their mutual interest as industry partners in growing the game of golf and advancing their respective platforms and

3

missions.  (SOF ¶ 7.)  As part of that alliance, PGA TOUR committed to assist in expanding the amount of LPGA programming that appears on major networks.  PGA TOUR has also formally committed to increasingly promoting the LPGA Tour on its broadcasts.  (SOF ¶ 8.)

Against this backdrop, during the May 29, 2019, broadcast of *Hank Haney Golf Radio*, Haney and his co-host, Steve Johnson, engaged in the following on-air exchange:

> JOHNSON:  This week is the 47th U.S. Women's Open, Hank.
>
> HANEY:  Oh it is?  I'm gonna guess a Korean.
>
> JOHNSON:  OK, that's a pretty safe bet.
>
> HANEY:  I couldn't name you six players on the LPGA Tour.  Maybe I could.  Well…I'd go with Lee.  If I didn't have to name a first name, I'd get a bunch of them right.
>
> JOHNSON:  We've got six Lees.

(SOF ¶ 16.)

While he was still on the air, Haney learned that his comments had offended people.  (SOF ¶ 17.)  Haney's agent pressured him to apologize while Haney was still on the air, and SiriusXM helped Haney prepare a written apology that he issued on Twitter that day.  (SOF ¶¶ 18, 19.)  Both media outlets and prominent figures in the golf world, including multiple LPGA players, reacted negatively to Haney's on-air comments during that broadcast.  (SOF ¶¶ 20-23.)  For example, in a piece published in *USA Today's* online edition just hours after Haney's broadcast concluded, Christine Brennan—a well-known and respected sports journalist—included the following statement: "Where is the PGA of America's comment condemning Haney?  Augusta National's? *The PGA Tour's, since it's their show?*"  (SOF ¶ 21 (emphasis added).)

After Haney's broadcast, PGA TOUR's communications team began following the public response to Haney's comments, including the media response and the public's response on social

4829-8479-0498

media.  (SOF ¶ 20, 22.)   The next day, PGA TOUR Commissioner, Jay Monahan ("Monahan") became concerned that PGA TOUR's brand was being perceived as affiliated with Haney's on-air comments, especially in light of PGA TOUR's relationship with the LPGA and the intensifying negative public response to Haney's comments.  (SOF ¶¶ 24, 26-29.) Also on May 30, 2019, Monahan spoke with Scott Greenstein, SiriusXM's President and Chief Content Officer, to express these concerns, and to inform Greenstein that he felt Haney's comments during the May 29th broadcast were "completely unacceptable, indefensible."  (SOF ¶¶ 26-29.)

Thereafter, SiriusXM suspended Haney from broadcasting on SiriusXM PGA TOUR Radio, and PGA TOUR and SiriusXM worked together to prepare and release a joint public statement regarding Haney's suspension.   (SOF ¶¶ 32-33.)   No one from PGA TOUR communicated further with SiriusXM regarding Haney's suspension, including the length of the suspension.  (SOF ¶ 34.)  The day his suspension was announced, Haney decided he would never return to broadcasting on SiriusXM PGA TOUR Radio as long as it remained a PGA TOUR-branded station.  (SOF ¶¶ 35-37.)  Within days, Haney's agent began negotiating a financial buyout of the Haney Agreement with SiriusXM, which culminated in Plaintiffs and SiriusXM signing a Settlement Agreement in July of 2019 that formally cancelled the Haney Agreement and discontinued *Hank Haney Golf Radio*.  (SOF ¶¶ 39, 40.)  Haney promptly identified and pursued an opportunity to broadcast a podcast with iHeart Media, Inc., which he continues broadcasting to this day.  (SOF ¶¶ 38, 42.)  On December 18, 2019, Plaintiffs filed this lawsuit.  (SOF ¶ 43.)

## MEMORANDUM OF LAW

## I.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper where the record evidence, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56(c) "mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party shall bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to designate specific facts showing that a genuine issue exists for trial. *Celotex Corp.*, 477 U.S. at 324. An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party needs more than a "mere scintilla of evidence," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997); *see also Brooks v. CSX Transp., Inc.*, 555 F. App'x 878, 880 (11th Cir. 2014) ("Conclusory allegations without specific supporting facts have no probative value in the summary judgment context.").

## II.   PGA TOUR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TORTIOUS INTERFERENCE WITH CONTRACT CLAIM (COUNT I).

Plaintiffs' Count I for tortious interference with their contract with SiriusXM fails as a matter of law because the record is devoid of evidence, even as produced by Plaintiffs, that SiriusXM breached the Haney Agreement. (*See* SOF, ¶ 41.) For Plaintiffs to proceed on their tortious interference with contract claim, they must establish and prove: "(1) [t]he existence of a contract; (2) [PGA TOUR's] knowledge of the contract; (3) [PGA TOUR's] *intentional procurement of the contract's breach*; (4) [t]he absence of any justification or privilege; and (5) [d]amages resulting from the breach." *Banks Hardwoods Fla., LLC v. Maderas Iglesias, S.A.*, No.

6

08-23497-CIV, 2009 WL 3446736, at *1 (S.D. Fla. Oct. 20, 2009) (applying Florida law);[2] *see also Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla. Inc.,* 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (stating that plaintiffs asserting claims for tortious interference with contract must "establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages."). A third party intentionally interferes with a contract by "influencing, inducing or coercing one of the parties to breach the contract" thereby causing injury to the plaintiff. *Banks Hardwoods Fla.,* LLC, 2009 WL 3446736, at *1 (citing *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999) (collecting cases)).

Plaintiffs allege that "[t]he PGA TOUR intentionally and unjustifiably interfered with Plaintiffs' rights under the [Haney Agreement] by inducing Sirius XM's termination of the Agreement." (Compl., ECF 1 ¶ 48.) However, Plaintiffs' testimony and other discovery in this matter (including documents SiriusXM produced, and Greenstein's deposition) have not shown any conduct by PGA TOUR inducing SiriusXM to breach its agreement with Plaintiffs. In fact, Plaintiffs testified as follows on this very point:

Q:    Did you ever take the position with SiriusXM that they had breached your contract?

A:    That they had breached my contract?

Q:    Yeah.

A:    By taking me off – what would they have done to breach my contract?

Q:    I'm asking you. Did you ever – in any of your discussions –

A:    No.

Q:    - leading up to the settlement, did you ever take the position that SiriusXM had breached the contract?

---

[2] Unless otherwise noted, all emphases are supplied.

      A:    No.

(*See* SOF, ¶ 41.)

Where, as here, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party shall bear the burden of proof at trial," summary judgment on that claim is required.  *Celotex Corp.*, 477 U.S. at 322.  In that the record is devoid of evidence demonstrating that SiriusXM breached the Haney Agreement after the May 29, 2019, broadcast, Plaintiffs are unable to prove an essential element of their tortious interference with contract claim.  As such, PGA TOUR is entitled to judgment on Plaintiffs' Count I as a matter of law.[3]  *See Banks Hardwoods Fla., LLC*, 2009 WL 3446736 at *1 (granting summary judgment on tortious interference with contract claim where plaintiff "failed to show the third element" – the "defendant's intentional procurement of the contract's breach"); *see also Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1535 (M.D. Fla. 1996) (granting summary judgment on tortious interference with contract claim because plaintiff "ha[d] not presented sufficient evidence that [p]laintiff's contracts with [defendants] ha[d] been breached."); *Black v. Advanced Neuromodulation Sys., Inc.*, No. 4:11cv539-WS, 2014 WL 1303656, at *9 (N.D. Fla. Mar. 27, 2014) (granting summary judgment on plaintiff's tortious interference with contract claim where "the evidence reveal[ed] that [employer] did not breach its contract with [plaintiff].").

---

[3] As will be discussed further below, PGA TOUR is also entitled to summary judgment on Plaintiffs' tortious interference with contract claim because Plaintiffs cannot make a sufficient evidentiary showing that PGA TOUR's alleged interference in their contractual and business relationship with SiriusXM was unjustified.

4829-8479-0498

III.    **PGA TOUR IS OTHERWISE ENTITLED TO SUMMARY JUDGMENT ON COUNTS 1 AND II BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT PGA TOUR'S ALLEGED INTERFERENCE WAS UNJUSTIFIED.**

Even if Plaintiffs could establish that SiriusXM breached the Haney Agreement—which they cannot for the reasons stated above—in order to establish and prevail on their tortious interference with contract claim (Count I), and on their tortious interference with business relationship claim (Count II), Plaintiffs must proffer sufficient evidence to demonstrate that PGA TOUR's alleged interference in their contract and business relationship with SiriusXM was *unjustified*. *See Banks Hardwoods Fla., LLC*, 2009 WL 3446736, at *1 (applying Florida law); *see also St. John's Water Mgmt. Distr. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 504 (Fla. 5th DCA 2001) (stating that the "judicial trend seems to increasingly meld the two torts [tortious interference with contract and tortious interference with business relationship] into one by blurring the lines of demarcation."); *accord Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

Florida law has long recognized that conduct like PGA TOUR's alleged conduct in this case is justified when, as here, the alleged interferor acts to protect its own economic and business interests. *See Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 – 25 (Fla. 3d DCA 1980).  A person or entity is entitled to interfere when it is not a stranger to the business relationship and has a "beneficial or economic interest in, or control over, that relationship," including "when a defendant has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2017 WL 3237375, at *8 (S.D. Fla. July 31, 2017) (applying Florida law) (citing *Hamilton v. Suntrust Mortg., Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014)).

A. **PGA TOUR's Actions were Justified to Protect its Economic and Business Interests in its Brand, Which is Closely Associated with SiriusXM PGA TOUR Radio.**

"A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage." *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (directing the entry of summary judgment because the defendant's alleged tortious interference was justified). "[T]here can be no [tortious interference] claim where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Genet Co. v. Anheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986) (affirming summary judgment for the defendant).

Here, the uncontroverted record evidence demonstrates both PGA TOUR's economic and financial interest in SiriusXM PGA TOUR Radio, and also the threat Haney's May 29, 2019, comments posed to its economic and financial interests. First and foremost, Plaintiffs cannot contest that the PGA TOUR has an economic and financial interest in the SiriusXM PGA TOUR Radio channel, given that its name and marketing is tied to PGA TOUR's brand. Moreover, SiriusXM operates that channel using PGA TOUR's trademarks and other intellectual property granted to SiriusXM pursuant to the terms and conditions of the License Agreement. (*See* SOF ¶¶ 2, 3.)

Both the documents produced in this case and witness testimony demonstrates that immediately following Haney's May 29, 2019, broadcast, there was a flurry of intense public reaction to Haney's comments. Among those reactions was an article Christine Brennan published in *USA Today's* online edition the afternoon of May 29, 2019, mere hours after Haney concluded his show. (*Id.* ¶ 21, Ex. 3-1.) In that article, which included a scathing rebuke of Haney's comments, Brennan specifically called for comment from several prominent golf organizations –

10

"Where is the PGA of America's comment condemning Haney?  Augusta National's?  *The PGA TOUR's, since it's their show?*"  (*Id.* at Ex. 3-1, p.2)  Critically, this reaction to Haney's May 29, 2019, broadcast, as well as other similar reactions, closely associated Haney's comments with PGA TOUR's brand. (*Id.*; *see also id.* ¶ 22, and exhibits attached thereto.)  Such reactions also assumed PGA TOUR had oversight or control over *Hank Haney Golf Radio* by virtue of the show's dissemination on SiriusXM *PGA TOUR Radio*.

Immediately following the May 29, 2019, broadcast of *Hank Haney Golf Radio*, PGA TOUR's communications team began tracking and documenting the response to Haney's comments on social media.  (SOF ¶¶ 20, 22, 23.)  That tracking revealed an intense backlash from Haney's comments, both in terms of the kinds of reactions being expressed, and also in the increased volume of reactions with time.  (*Id.*)  Both Monahan and Neal testified during their depositions that following Haney's May 29, 2019, broadcast, while they each found Haney's comments offensive and contrary to PGA TOUR's values the main reason they felt PGA TOUR had to take action was to protect the integrity of the PGA TOUR's brand in the public sphere, including as it related to SiriusXM PGA TOUR Radio.  (*Id.* ¶¶ 20, 22, 23, 26, 27.)   There is no genuine issue of material fact that when Monahan reached out to Greenstein regarding Monahan's concerns about Haney's comments, one of Monahan's primary motivations in doing so was concern for the PGA TOUR brand and public standing in the wake of Haney's controversial comments.  (*Id.* ¶¶ 26-28.).  PGA TOUR also had a supervisory interest over how the Haney Agreement was performed, as pursuant to the License Agreement between PGA TOUR and SiriusXM, programming was required to be agreed upon by the parties in advance of distribution on SiriusXM *PGA TOUR Radio*, and SiriusXM had an obligation to ensure that its representatives

did not incorporate into the Programming any material which was detrimental to the TOUR.  (SOF ¶¶ 3-6, Ex. 1-1)

For these reasons, the uncontroverted record reflects Plaintiffs cannot establish an essential element of both of their tortious interference claims – that PGA TOUR's actions were unjustified. PGA TOUR is entitled to summary judgment on both claims on this basis.  *See Celotex Corp.*, 477 U.S. at 322; *see also Ethyl Corp. v. Balter*, 386 So. 2d at 1225 (stating that "so long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely nonactionable."); *see also Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d 1269, 1287 (M.D. Fla. 2002), *aff'd*, 364 F.3d 1288 (11th Cir. 2004) (granting summary judgment on tortious interference claim and stating that "Florida courts recognize that, 'If a defendant interferes with a contract in order to safeguard a preexisting economic interest of his own, the defendant's right to protect his own established economic interest outweighs the plaintiff's right to be free of interference, and his actions are usually recognized as privileged and nonactionable.") (internal quotations omitted); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2011 WL 2174012 at *15 (S.D. Fla. June 2, 2011) (granting summary judgment to defendant on tortious interference with business relationship claim where defendant "pointed to evidence" that indicated it acted "to control the integrity of its brand"); *see also Mattocks v. Black Ent. Television LLC*, 43 F. Supp. 3d 1311, 1319 (S.D. Fla. 2014) (ruling that defendant had an economic interest when plaintiff deprived defendant of "control over its intellectual property" on a social media platform, and further ruling that defendant acted to protect its "brand owners' rights.").

4829-8479-0498

**B.** **PGA TOUR's Actions Were Also Justified to Protect its Business Relationship with the LPGA.**

Separate and apart from its obvious economic and business interests in the PGA TOUR brand, PGA TOUR was also justified in its actions because of its economic and business interest in protecting its burgeoning relationship with the LPGA.  PGA TOUR and the LPGA are parties to a strategic alliance.  (SOF ¶¶ 7, 8.)  Through that alliance, PGA TOUR and the LPGA intended to pursue their shared interest in growing the game of golf and advancing each organization's respective platform and mission.  (SOF ¶ 7.)  As Monahan testified, as part of that alliance, PGA TOUR formally committed to assist in expanding the amount of LPGA programming appearing on major networks.  (SOF ¶ 8.)  PGA TOUR also committed to increasingly promoting the LPGA Tour on its own broadcasts.  (SOF ¶ 8.)

In addition to concerns over the negative impact to its brand by virtue of being associated with Haney's May 29, 2019, comments, PGA TOUR was also concerned about that impact on its business relationship with the LPGA.  (*SOF* ¶¶ 24, 26, 27.)  Consequently, Monahan's conduct, in whole or in part, to safeguard this relationship is not actionable as tortious interference.  *Ethyl Corp. v. Balter*, 386 So. 2d at 1225; *see also Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d at 1287; *Pandora Jewelers 1995, Inc.*, 2011 WL 2174012 at *15; *Mattocks*, 43 F. Supp. 3d at 1319.

**C.** **PGA TOUR's Actions Were Consistent With its Rights Under its License Agreement with SiriusXM, and PGA TOUR was Not a Stranger to Plaintiffs' Relationship with SiriusXM.**

PGA TOUR's actions were also consistent with its rights pursuant to its License Agreement with SiriusXM.  The License Agreement provides PGA TOUR a broad right of consent to all programming aired on SiriusXM PGA TOUR Radio in exchange for SiriusXM's ability to use

13

PGA TOUR's intellectual property, including its trademarks, in connection with that channel. (SOF ¶¶ 1, 2, 3, 4, 5, 6, Ex. 1-1.)

Under Florida law, "no cause of action for intentional interference exists which is the consequence of a rightful action." *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No.: 3:09-cv-2-J-34TEM, 2011 WL 13176212, at * 5 (M.D. Fla. Aug. 3, 2011) (citing *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281, 292 – 93 (Fla. 3d DCA 2007)).  As such, interference is legally justified where a defendant acts pursuant to its contractual authority. *Textron Fin. Corp.*, 2011 WL 13176212, at *5 (citing *Networkip, LLC v. Spread Enterprises, Inc.*, 922 So. 2d at 358). Here, PGA TOUR had the expectation under its License Agreement with SiriusXM that SiriusXM would "ensure…[that it would] not incorporate into the Programming any material which [was]:…(iv) otherwise detrimental to [PGA] TOUR…"  (SOF ¶ 6, Ex. 1-1 at Art. II, Section 2.01(f).)  This, too, supports summary judgment in PGA TOUR's favor on Plaintiffs' tortious interference claims because not only did PGA TOUR act justifiably to protect its financial and business interests in response to Haney's May 29, 2019, comments, it did so consistently with its contractual rights with SiriusXM. *See Textron Financial Corporation*, 2011 WL 13176212, at *5 – 6 (granting summary judgment on tortious interference with business relationship claim where the defendant "was acting to protect its own contractual and financial interests," including by taking actions in conformity with "its contractual authority.").

Moreover, for interference to be unjustified, "the interfering defendant must be a third party, a stranger to the business relationship." *Mattocks*, 43 F. Supp. 3d at 1318 – 19 (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)). "A defendant is not a 'stranger' to a business relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Mattocks*, 43 F. Supp. 3d at 1319 (citing

4829-8479-0498

*Palm Beach Cty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quoting *Nimbus Tech., Inc. v. SunnData Prods., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007)).  Thus, "a party cannot be liable for tortious interference when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed."  *Mattocks*, 43 F. Supp. 3d at 1319 (internal citation omitted).

Here, Plaintiffs cannot validly claim that PGA TOUR was a stranger to their relationship with SiriusXM.  First and foremost, *Hank Haney Golf Radio* was broadcast on a channel called *SiriusXM PGA TOUR Radio*.  (SOF ¶¶ 9, 10, 11, Compl. ECF 1, Ex. A at ¶ 1.)  The License Agreement between PGA TOUR and SiriusXM explicitly contemplates that programming beyond PGA TOUR live event coverage would air on SiriusXM PGA TOUR Radio, and subjected that programming to PGA TOUR's consent and expectation that SiriusXM would not air any programming detrimental to PGA TOUR.  (SOF ¶¶ 1, 2, 3, 4, 5, 6, Ex. 1-1.)  Those facts, alongside the Haney Agreement's explicit reference to the fact that *Hank Haney Golf Radio* would air on that channel, demonstrates PGA TOUR's supervisory and economic interest in Plaintiffs' program, and thus, that PGA TOUR was not a true stranger to the relationship between Plaintiffs and SiriusXM.  This record evidence also supports granting summary judgment in PGA TOUR's favor on Plaintiffs' tortious interference claims.  *See Walter v. Jet Aviation Flight Servs., Inc.*, No. 9:16-CV-81238, 2017 WL 3237375, at *8 (S.D. Fla. July 31, 2017) (applying Florida law) (granting summary judgment on tortious interference claims partially on the basis that defendant was not a stranger to the subject business relationships, and therefore was privileged to interfere) (internal citation omitted)).

15

**D.**     **PGA TOUR Did Not Act with Malice, Nor Did PGA TOUR Employ Improper Means.**

There is an exception to the rule that a party cannot be liable for tortious interference when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.   That exception exists "where malice is the *sole* basis for the interference – that is, when the defendant is interfering *solely* out of spite, to do harm, or for some other bad motive."  *Mattocks*, 43 F. Supp. 3d at 1319 (emphasis in original) (citing *Ernie Ford Haire, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 at n. 9 (11th Cir. 2001)).

Beginning with the allegations in the Complaint and throughout this case, Plaintiffs have attempted to establish that PGA TOUR harbors "long-standing animus towards Haney from its desire to settle an old score relating to the professional golfer Tiger Woods."  (Compl. ECF 1, ¶ 3.)  Plaintiffs alleged that PGA TOUR demonstrated its vendetta against Haney through a years-long campaign to undermine Haney's business efforts prior to May 29, 2019.  Plaintiffs first claim that PGA TOUR's interference with Haney's business interests began in 2012 after he published *The Big Miss*, a book that details his time as Tiger Woods's swing coach from 2004 through 2010.  (*Id.* at ¶ 29.)  According to Plaintiffs, PGA TOUR "worked to discredit Haney and his book release in 2012 to protect its own financial interests."  (*Id.* at ¶ 31.)  PGA TOUR also allegedly "induced both 'PGA Tour Superstores' and 'PGA Tour Shops' to cancel previously placed orders of *The Big Miss*," and "induced smaller shops to back out of their preorders for the book."  (*Id.* at ¶ 32.)  PGA TOUR's vendetta allegedly continued when the Golf Channel allegedly discontinued Haney's show, *The Haney Project*, in 2013 "under pressure from…PGA TOUR."  (*Id.* at ¶33.)  Finally, Plaintiffs claim that in 2016, PGA TOUR "yet again exerted influence…to have Avis cancel another program with Haney."  (*Id.* at ¶ 34.)

Despite Plaintiffs' allegations, and ample opportunity to conduct discovery into their

claims (including third-party discovery), Plaintiffs have neither procured nor provided any evidence supporting that PGA TOUR harbored any "long-standing animus towards Haney." (SOF ¶¶ 44, 45, 46, 47, 48, 49, 50.)[4]  Nor can Plaintiffs otherwise establish that PGA TOUR's conduct in response to Haney's May 29, 2019, comments, even absent evidence of any "long-standing animus towards Haney," was motivated solely by malice.  As discussed above, PGA TOUR's actions in response to Haney's comments were taken in an effort to protect its brand's standing, and to protect its relationship with the LPGA.  *See* sections III.A-C, *supra*.  Nevertheless, even if PGA TOUR did harbor some malice or animus towards Haney, the existence of malice or animus alongside legitimate business or financial interests does not vitiate that PGA TOUR's actions were justified as a matter of law.  "[I]t is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the plaintiff." *Ethyl Corp.*, 386 So. 2d at 1225 (further noting "[w]here one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice, or other bad motive towards another, does not give the latter a right of action against the former.") (internal citation and quotation omitted).

Nevertheless, "even where the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper methods were used." *Mattocks*, 43 F. Supp. 3d at 1319 (citing *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (collecting Florida cases)); *see also Ethyl Corp.*, 386 So. 2d at 1225.  Improper means include the use of physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and

---

[4] Critically, a substantial portion of Haney's and his agent's testimony on these points amounted to inadmissible hearsay, or hearsay-within-hearsay. *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1276 (S.D. Fla. 2008); *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

threats of illegal conduct. *See Carlwood Safety, Inc. v. Wesco Distrib., Inc.*, 446 F. Supp. 3d 970, 980 n.9 (M.D. Fla. 2020) (internal quotation omitted); *Florida Standard Jury Instructions in Civil Cases* § 408.6 (2018)).  Here, Plaintiffs can point to no evidence establishing that PGA TOUR employed improper means when communicating with SiriusXM in response to Haney's May 29, 2019, comments.  Both PGA TOUR Commissioner Monahan and SiriusXM President and Chief Content Officer Greenstein testified that Monahan did not threaten Greenstein.  (SOF ¶¶ 26, 27, 28, 29.)  While Greenstein testified Monahan was clearly upset during their conversation, that is not enough to rise to the level of "threats or intimidation" for purposes of establishing that PGA TOUR employed improper means when communicating with SiriusXM.  *See Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (granting summary judgment on tortious interference with business relationship claim where "there [was] no evidence that [defendant] engaged in any conduct that would take it outside of its privilege to protect its own business interests."); *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 651 (Fla. 4th DCA 2020), *review denied*, No. SC20-1116, 2020 WL 6391277 (Fla. Nov. 2, 2020) (affirming summary judgment for defendant on tortious interference claim because defendant did not employ improper means when it insisted upon its existent legal rights); *Compass iTech, LLC v. eVestment All., LLC*, No. 14-81241-CIV-MARRA\MATTHEWMAN, 2016 WL 10519027, at *23 (S.D. Fla. June 24, 2016) (granting motion for partial summary judgment in favor of defendant on tortious interference claim because defendant did not use improper means when it issued a letter containing a truthful account of plaintiff's actions and imposed security measures that impeded plaintiff's ability to upload data).  As such, there is no genuine issue of material fact as to whether PGA TOUR's actions were justified, and therefore, PGA TOUR is entitled to judgment as a matter of law on Plaintiffs' tortious interference claims.

4829-8479-0498

## **CONCLUSION**

For the reasons discussed above, summary judgment should be granted to PGA TOUR on

Plaintiffs' claims for tortious interference with contract (Count I) and for tortious interference with

business relationship (Count II), along with such other and further relief as the Court deems proper.


Dated: April 19, 2021                                    Respectfully submitted,

                                                         */s/ William E. Davis*
                                                         William E. Davis
                                                         Florida Bar No. 191680
                                                         wdavis@foley.com
                                                         Angelica L. Novick
                                                         Florida Bar No. 105069
                                                         anovick@foley.com
                                                         Foley & Lardner LLP
                                                         2 South Biscayne Boulevard, Suite 1900
                                                         Miami, FL 33131-1832
                                                         Telephone: (305) 482-8400
                                                         Facsimile: (305) 482-8600

                                                         Kelly S. Milliron
                                                         Florida Bar No. 1018917
                                                         kmilliron@foley.com
                                                         Foley & Lardner LLP
                                                         1 Independent Drive, Suite 1300
                                                         Jacksonville, FL 32202
                                                         Telephone: (904) 359-2000
                                                         Facsimile: (904) 359-8700
                                                         *Counsel for Defendant, PGA TOUR, Inc.*


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 19, 2021, I electronically served the foregoing on all

counsel of record via the e-mail addresses listed on the attached Service List.

                                                         */s/ William E. Davis*
                                                         William E. Davis

4829-8479-0498

<u>SERVICE LIST</u>
Hank Haney and Hank Haney Media, LLC v. PGA TOUR, Inc.

<u>Case No. 0:19-cv-63108-rar</u>

**Attorneys for Plaintiffs:**

**Riley W. Cirulnick**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
Fax: 954-462-4300
rcirulnick@rprslaw.com

**Peter R. Ginsberg**
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, NY 10022
(212) 730-7700
pginsberg@mrllp.com

**Arthur Halsey Rice**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3 Avenue
Suite 1800
Fort Lauderdale, FL 33301
305-379-3121
Fax: 305-379-4119
arice.ecf@rprslaw.com
arice@rprslaw.com

4829-8479-0498