# Exhibit 6

# Relevant portions of the deposition testimony of Irving Azoff, taken on February 12, 2021

```
 1                UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF FLORIDA

 3

 4   HANK HANEY and

 5   HANK HANEY MEDIA, LLC,

 6            Plaintiffs,

 7   v.                              Case No. 0:19-cv-63108-RAR

 8   PGA TOUR, INC.,

 9            Defendant.

10

11            *************************************

12              REMOTE VIDEOTAPED DEPOSITION OF
                          IRVING AZOFF
13                     FEBRUARY 12, 2021

14            *************************************

15         CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

16

17      REMOTE VIDEOTAPED DEPOSITION OF IRVING AZOFF

18   taken in the above-styled and numbered cause on

19   February 12, 2021, commencing at 10:01 a.m., before Gina

20   Williams, Registered Professional Reporter, Certified

21   Realtime Reporter and Certified Realtime Captioner.

22

23

24

25
```

```
 1  BY MR. GINSBERG:
 2      Q    Was it in fact increasing in popularity and
 3  viewership consistently from the time it started on SiriusXM
 4  until the time Mr. Haney was terminated?
 5           MR. DAVIS:  Objection to form.
 6      A    Scott led me to believe that, yes, the show was
 7  very successful, and the audience was growing.
 8  BY MR. GINSBERG:
 9      Q    Is there any reason, from a business standpoint,
10  that Mr. Greenstein would have wanted to terminate
11  Mr. Haney's services?
12           MR. DAVIS:  Objection to form, absence of a
13      predicate.
14      A    None that I know of.
15  BY MR. GINSBERG:
16      Q    Did Mr. Greenstein ever express any concern or
17  disappointment with regard to Mr. Haney and his show to you?
18      A    Scott definitively told me that he did not want
19  to lose Hank off the show and did not believe that whatever
20  the incident created was grounds for dismissal.
21      Q    I'd like to talk to you a little bit about --
22  well, a lot bit about the dispute in May of 2019.
23           Did you become involved in that dispute?
24      A    Yes.
25      Q    How did that come about?
```

1  was the focus of the controversy?
2      A    Yes.
3      Q    What was your reaction to that statement?
4      A    I thought it was an overreaction, you know.  A
5  bigger deal was made out of it than, in my opinion, should
6  have been.
7           I mean, I'm experiencing the same thing watching
8  Bruce Springsteen get hammered for his little drinking
9  incident and Jeep right now.
10          But remember, I represent talent, so I tend to
11 believe that talent are generally mistreated by big
12 organizations.
13     Q    What was Mr. Greenstein's reaction to the
14 statement that was the focus of the controversy?
15     A    He -- he didn't believe that it was worthy of all
16 the controversy that it created.
17     Q    Were you involved in reviewing various drafts and
18 iterations of a media release regarding this controversy?
19     A    I may have been --
20          Scott is a serial e-mailer, and I get massive
21 tonnage of e-mail and texts.
22          I may have seen drafts.  I do recall
23 conversations with him where he said, "I'm not taking the
24 fall for this."
25          So I do remember him working with a press release

```
 1      Q    Could you read Mr. Greenstein's comment to you in
 2  the record, please?
 3      A    "Look what the tour wants to put out.  Like Hank
 4  is a criminal."
 5      Q    Did you have a conversation with Mr. Greenstein
 6  either about Mr. Greenstein's reaction that the tour was
 7  treating Hank like a criminal or a conversation about that
 8  press release generally?
 9      A    Again, this is consistent with what we were
10  talking about that Scott all through the process felt that
11  Hank was being more severely treated than warranted.
12      Q    And was it consistent with what Mr. Greenstein
13  was saying to you, his comment that the PGA was treating
14  Mr. Haney like a criminal?
15      A    That was his position, yes.
16      Q    On the next page of Azoff Exhibit 1, there's a
17  second iteration of the media release.  This one is entitled
18  "SiriusXM Statement on Hank Haney."
19           Do you see that?
20      A    Yes.
21      Q    And in fact, if you turn to the page before, this
22  was sent to Mr. Greenstein from Andrew Fitzpatrick.
23           Do you see that?
24      A    Yes.
25      Q    If you look towards --
```

```
 1        very frustrating.
 2              THE WITNESS:  Can't hear him.
 3              VIDEOGRAPHER:  Can you sit closer to your
 4        microphone?
 5              (Cross-talk and technical difficulties.)
 6              (Discussion was held off the record.)
 7   BY MR. GINSBERG:
 8        Q    I was asking you, Mr. Azoff, given your
 9   experience in the industry, would you expect that the PGA
10   would have sufficient sophistication to negotiate the right
11   to control content on SiriusXM if it believed it should have
12   that right?
13        A    They're very well-represented.  They're a class
14   organization.
15        Q    So the answer is yes?
16        A    Yes.
17        Q    You were asked questions by Mr. Davis about your
18   reaction to broadcasts.
19              We've received the reaction that SiriusXM
20   received, and would it surprise you to learn that about
21   95 percent of the reaction from its viewership supported
22   Mr. Haney?
23        A    Would not surprise me.
24        Q    And would it surprise you if only one or so
25   viewers reacted in favor of PGA and it having taken
```

# Exhibit 6-1

# Exhibit 1 to the deposition testimony of Irving Azoff, taken on February 12, 2021

# Irving Azoff

| | |
|---|---|
| **From:** | Greenstein, Scott <Scott.Greenstein@siriusxm.com> |
| **Sent:** | Thursday, May 30, 2019 2:41 PM |
| **To:** | Irving Azoff |
| **Subject:** | Fwd: Haney statement |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Look what the tour wants to put out. Like Hank is a criminal

Sent from my iPhone

Begin forwarded message:

> **From:** "Fitzpatrick, Andrew" <Andrew.Fitzpatrick@siriusxm.com>
> **Date:** May 30, 2019 at 5:38:32 PM EDT
> **To:** "Greenstein, Scott" <Scott.Greenstein@siriusxm.com>
> **Cc:** "Cohen, Steve" <Steve.Cohen@siriusxm.com>, "Moss, Andrew" <Andrew.Moss@siriusxm.com>, "Reilly, Patrick" <Patrick.Reilly@siriusxm.com>
> **Subject: RE: Haney statement**
>
> This is what the PGA Tour sent me. She was waiting on final approval and plans to send at 6pm.
>
> **From PGA TOUR:**
>
> Hank Haney's comments were insensitive, irresponsible and uneducated. We shared our position with SiriusXM's leadership that Hank and his commentary have no place on PGA TOUR Radio. We hope Sirius/XM does the right thing. The PGA TOUR is committed to and proud of the increasingly diverse makeup of our fan base, not to mention the power and accomplishments of the game's world-class, global players - both on the PGA TOUR and LPGA, whom we are working with more closely than ever before. Comments or actions to the contrary will not deter us in our efforts to ensure that golf is a game for everyone.
>
> **From:** Greenstein, Scott
> **Sent:** Thursday, May 30, 2019 5:37 PM
> **To:** Fitzpatrick, Andrew <Andrew.Fitzpatrick@siriusxm.com>
> **Cc:** Cohen, Steve <Steve.Cohen@siriusxm.com>; Moss, Andrew <Andrew.Moss@siriusxm.com>; Reilly, Patrick <Patrick.Reilly@siriusxm.com>
> **Subject:** Re: Haney statement
>
> Send just the revised one to Jeremy Aisenberg and get his approval and send me a clean one ASAP. Not sure I want to do. Have u seen their proposed statement?
>
> Sent from my iPhone
>
> On May 30, 2019, at 5:34 PM, Fitzpatrick, Andrew <Andrew.Fitzpatrick@siriusxm.com> wrote:

> **Exhibit 1**
> Azoff 2/12/2021 G.W.

1

**Azoff Exhibit 1**

Revised below. Fyi, PGA Tour plans to put their statement out at 6pm. Our plan would be to send this to our list of golf media and all other writers who reached out for comment (not PR Newswire).

<image001.jpg>

**For immediate release:**

## SiriusXM Statement on Hank Haney

**NEW YORK – May xx, 2019** – Mr. Haney's comments on women's professional golf do not represent the views of SiriusXM or the PGA TOUR. SiriusXM proudly covers and supports both women's and men's sports and the athletes that make them great. At the PGA TOUR's request we have suspended Mr. Haney from the SiriusXM PGA TOUR Radio channel. We are reviewing his status on SiriusXM going forward.

###

**From:** Greenstein, Scott
**Sent:** Thursday, May 30, 2019 5:26 PM
**To:** Fitzpatrick, Andrew <Andrew.Fitzpatrick@siriusxm.com>
**Cc:** Cohen, Steve <Steve.Cohen@siriusxm.com>; Moss, Andrew <Andrew.Moss@siriusxm.com>; Reilly, Patrick <Patrick.Reilly@siriusxm.com>
**Subject:** Re: Haney statement

Second paragraph doesn't work.delete. Too defensive. Make it clear PGA wants him off and we reviewing facts and will determine Hank's broadcasting for SiriusXM at later date. This is all on PGA they want it they better have balls to stand behind it.

Sent from my iPhone

On May 30, 2019, at 5:20 PM, Fitzpatrick, Andrew <Andrew.Fitzpatrick@siriusxm.com> wrote:

> Scott:
> For your review, here is a statement on Haney. Below our statement is what the PGA Tour said they plan to issue.
>
> <image001.jpg>
>
> **For immediate release:**

**Azoff Exhibit 1**

# SiriusXM Statement on Hank Haney

**NEW YORK – May xx, 2019** – Mr. Haney's comments on women's professional golf do not represent the views of SiriusXM or the PGA TOUR. SiriusXM proudly covers and supports both women's and men's sports and the athletes that make them great. After discussion with the PGA TOUR, and at their request, we have suspended Mr. Haney from the SiriusXM PGA TOUR Radio channel and we will continue to evaluate his role on the channel.

SiriusXM is home to many different voices and viewpoints. We promote an atmosphere of inclusion and diversity in our company and on our airwaves.

###

## From PGA TOUR:

Hank Haney's comments were insensitive, irresponsible and uneducated. We shared our position with SiriusXM's leadership that Hank and his commentary have no place on PGA TOUR Radio. We hope Sirius/XM does the right thing. The PGA TOUR is committed to and proud of the increasingly diverse makeup of our fan base, not to mention the power and accomplishments of the game's world-class, global players - both on the PGA TOUR and LPGA, whom we are working with more closely than ever before. Comments or actions to the contrary will not deter us in our efforts to ensure that golf is a game for everyone.


Andrew FitzPatrick
**SiriusXM**
1221 Avenue of the Americas
New York, NY  10020
212-901-6693 (office)
andrew.fitzpatrick@siriusxm.com
<image002.jpg>

Azoff Exhibit 1

# Exhibit 6-2

# Settlement Agreement and Release
# dated July 8, 2019

PRIVILEGED & CONFIDENTIAL

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as of July 8, 2019 (the "Effective Date"), by and among Sirius XM Radio Inc. ("Sirius XM"), on the one hand, and Hank Haney Media, LLC ("Company") and Hank Haney ("Haney"), on the other hand (each of Sirius XM, Company and Haney, a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, the Parties previously entered into that certain letter agreement, dated as of November 30, 2017, which was amended and restated by that certain letter agreement dated December 21, 2017 and further amended by that certain first amendment effective as of October 1, 2018 (collectively, the "Talent Agreement").

WHEREAS, the Parties have agreed to terminate the Talent Agreement and cease all Programming (as defined in the Talent Agreement) effective as of June 14, 2019 (the "Termination Date").

WHEREAS, the Parties wish to enter into this Agreement in order to resolve all matters that may be in controversy or dispute between them related to the termination of the Talent Agreement.

NOW THEREFORE, the Parties, for the good and valuable consideration set forth below, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, agree to the following:

1. Termination of Talent Agreement.

(a) The Talent Agreement terminated as of the Termination Date, and none of the Parties will have any rights or obligations under the Talent Agreement from or after the Termination Date, except as otherwise expressly set forth in this Agreement.

(b) Notwithstanding the foregoing, the following provisions in the Talent Agreement will continue according to their terms of the Talent Agreement as if set forth in their entirety herein (i) Section 2(a)– Intellectual Property Rights and License subsection; provided that, as of the Termination Date Sirius XM shall not have the right to use the name, voice, images, or likenesses of Haney in any Sirius XM advertising, marketing, or promotional materials, including in connection with the promotion of the Programming; (ii) Section 3(b)– Restrictions subsection on Company and Haney participating in interviews regarding Sirius XM's business (provided that such restrictions shall not limit Company's or Haney's right to discuss satellite radio or Sirius XM generally, subject to the additional terms and conditions herein); (iii) Section 4(d)– No deductions on payments made to Company and Company's compliance with all taxes subsection; (iv) Section 7 – Representations, Warranties and Indemnification (which, by signing this Agreement, each Party reaffirms all of their representations, warranties and indemnification obligations contained therein); (v) Section 8 – Confidentiality; and (vi) Section 9(b)- Governing Law subsection  Section 9(c) of the Talent Agreement will no longer apply, and will instead be superseded by this Section 1(b).

AMS - 11/20/2020

Haney22

2. <u>Payments and Other Consideration</u>. In consideration for each of Company and Haney executing this Agreement and their continuous compliance with their respective obligations under this Agreement (including, without limitation, as set forth in Sections 1(b), 3, 4 and 5 hereof), Sirius XM hereby shall pay to Company $646,951 (the "<u>Settlement Payment</u>"), in full satisfaction of any and all amounts that may be payable to Company and/or Haney under the Talent Agreement (including, without limitation, any amounts contemplated under Section 4 of the Talent Agreement) or otherwise by any Sirius XM Released Party (as defined below). The Settlement Payment will be made in six (6) installments as follows: the first installment of $107,826 on July 1, 2019; the second installment of $107,825 on August 1, 2019; the third installment of $107,825 on September 1, 2019; the fourth installment of $107,825 on October 1, 2019; the fifth installment of $107,825 on November 1, 2019; and the sixth installment of $107,825 on December 1, 2019 (it being understood among the Parties that Haney will ultimately receive a benefit from the Settlement Payment).

3. Mutual Release of Claims.

(a) Subject to Sirius XM's full and timely performance of its obligations hereunder, Company and Haney, in each of their respective capacities and on behalf of each of their respective family members, heirs, executors, administrators, successors and assigns, and all of their respective past, present and future employees, agents, attorneys, consultants and affiliates (collectively the "<u>Company Releasors</u>"), irrevocably and unconditionally releases, discharges and acquits all of the Sirius XM Released Parties (as defined below) from any and all claims and causes of action of every kind and nature, whether known or unknown, which each of Company or Haney has or may have against any of the Sirius XM Released Parties at any time up through the Effective Date arising from, out of or in any way connected with the Talent Agreement.

(b) Subject to Company's and Haney's full and timely performance of their obligations hereunder, Sirius XM, on behalf of itself, its executors, administrators, successors and assigns, and all of their respective past, present and future affiliates, subsidiaries, attorneys, consultants, shareholders, officers, directors, agents, employees, attorneys, and consultants (collectively the "<u>Sirius XM Releasors</u>"), irrevocably and unconditionally releases, discharges and acquits all of the Company Releasors from any and all claims and causes of action of every kind and nature, whether known or unknown, which each of the Sirius XM Releasors has or may have against any of the Company Releasors at any time up through the Effective Date arising from, out of or in any way connected with the Talent Agreement.

(c) The foregoing releases set forth in Section 3(a) and 3(b) (each a "<u>Release</u>") will be construed as broadly as possible and will also extend to release each and all of the Sirius XM Released Parties and Company Releasors from any and all claims that each of the Sirius XM Released Parties and Company Releasors, respectively, has alleged or could have alleged against the other, whether known or unknown, based on acts, omissions, transactions or occurrences which occurred up through the Effective Date, including without limitation, any violation(s) of any federal, state, local or foreign law, ordinance and/or regulation; any public policy, contract, tort, or common law claim; and any demand for costs or litigation expenses, including but not limited to attorneys' fees.

2

(d)     The "Sirius XM Released Parties" as used herein will mean and include: (i) Sirius XM; (ii) each of Sirius XM's former, current and future parents, subsidiaries, direct corporate affiliates and stockholders; (iii) each predecessor and successor of any entity listed in clauses (i) and (ii); and (iv) each former, current, and/or future officer, director, agent, representative, employee, owner, attorney, employee benefit plan, employee benefit plan administrator, insurer, administrator, and fiduciary of any of the persons or entities listed in clauses (i) through (iii). The Sirius XM Released Parties shall not include PGA Tour, Inc. ("PGA"), nor any of PGA's parents, subsidiaries or affiliates. The "Releasors" as used herein will mean, as appropriate, the respective Sirius XM Releasors and Company Releasors. The term "Released Parties" will mean, as appropriate, the respective Sirius XM Released Parties and the Company Releasors.

(e)     Section 5 of this Agreement is expressly incorporated by reference into the foregoing Releases. In addition, the foregoing Releases do not release any claims which may not be released by applicable law, nor does it release any claims under the Age Discrimination in Employment Act.

(f)     Nothing contained in the above releases shall prevent the parties from asserting or pursuing any claim to enforce the terms of this Agreement or their rights under this Agreement.

4     Non-Disparagement.

(a)     As a material inducement for the Parties to enter into this Agreement, each Party agrees and acknowledges, for itself and on behalf of its respective Releasors, that none of them will make any statement (orally or in writing) or engage in any act which, in any way, Disparages (as defined below) or could Disparage the other Party or any of the other Party's respective Released Parties, or which could damage the reputation of any of the foregoing; provided that the foregoing will not preclude any Party from making truthful statements as required by law.

(b)     For the purpose of this Agreement, the word "Disparage" shall mean and include: ridicule, mock, insult, deride, scoff, put down, caricature in an unfavorable light, lampoon, parody, deprecate, denigrate, censure, impugn, accuse, denounce, defame, libel, vilify, revile, malign, cast aspersions upon, belittle, or otherwise speak in a manner which has the effect of demeaning or belittling the person or entity referenced.

5.     Confidentiality. The Parties and their counsel shall maintain as strictly confidential the terms of this Agreement; provided that, upon giving reasonable prior notice to the other Parties, a Party may disclose the terms of this Agreement to the extent necessary to comply with applicable law or court order, to enforce this Agreement, to respond to a request for information from a government agency conducting a formal or informal investigation, and/or to obtain legal or tax advice.

6.     Protected Disclosures.

(a)     Nothing in this Agreement will preclude, prohibit or restrict Company or Haney from (i) communicating with any federal, state or local administrative or regulatory agency or authority, including but not limited to the Securities and Exchange Commission (the "SEC");

3

CONFIDENTIAL                                                                                                                            HANEY000071

(ii) participating or cooperating in any investigation conducted by any governmental agency or authority; or (iii) filing a charge of discrimination with the United States Equal Employment Opportunity Commission or any other federal, state or local administrative agency or regulatory authority.

(b)   Nothing in this Agreement prohibits or is intended in any manner to prohibit, Company or Haney from (i) reporting a possible violation of federal or other applicable law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the SEC, the U.S. Congress, and any governmental agency Inspector General, or (ii) making other disclosures that are protected under whistleblower provisions of federal law or regulation. This Agreement does not limit the right of Company or Haney to receive an award (including, without limitation, a monetary reward) for information provided to the SEC. Company and Haney do not need the prior authorization of anyone at Sirius XM to make any such reports or disclosures, and neither Company nor Haney is required to notify Sirius XM that it or he, respectively, has made such reports or disclosures.

(c)   Nothing in this Agreement or any other agreement or policy of Sirius XM is intended to interfere with or restrain the immunity provided under 18 U.S.C. §1833(b). Neither Company nor Haney can be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (i) (A) in confidence to federal, state or local government officials, directly or indirectly, or to an attorney, and (B) for the purpose of reporting or investigating a suspected violation of law; (ii) in a complaint or other document filed in a lawsuit or other proceeding, if filed under seal; or (iii) in connection with a lawsuit alleging retaliation for reporting a suspected violation of law, if filed under seal and does not disclose the trade secret, except pursuant to a court order.

7.   Governing Law. This Agreement will be governed by and construed and enforced in accordance with the laws of the State of New York, regardless of principles of conflicts of laws that may require the application of the laws of another jurisdiction. Any action or litigation concerning this Agreement shall take place exclusively in the federal or state courts sitting in New York, New York, and the parties expressly consent to the jurisdiction of and venue in such courts and waive all defenses of lack of jurisdiction and inconvenient forum with respect to such courts.

8.   Amendment; Waiver. This Agreement may not be modified, altered or changed, except upon express written consent of the Parties.

9.   Entire Agreement. This Agreement (including, without limitation, the Releases herein, and the other agreements or portions thereof which are referenced herein as continuing in effect, and which will all constitute a part of this Agreement) sets forth the entire agreement among the Parties and fully supersedes any prior agreements or understandings among the Parties concerning the specific subject matter of this Agreement. Each Party acknowledges that it has not relied on any representations, promises, or agreements of any kind made to it in connection with any other Party's decision to enter into this Agreement, except for those set forth in this Agreement.

4

CONFIDENTIAL

HANEY000072

10. **Severability.** If any provision of this Agreement is declared or determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions will not be affected thereby, and said illegal, unenforceable or invalid part, term or provision will be deemed not to be part of this Agreement.

11. **Binding Effect; Assignment.** This Agreement will inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of the Parties, including, without limitation, any successor to Sirius XM.

12. **Counterparts.** This Agreement may be executed in counterparts, and each counterpart will have the same force and effect as an original and will constitute an effective, binding agreement on the part of each of the undersigned.

13. **Captions; Drafter Protection.** The headings and captions herein are provided for reference and convenience only, and will not be employed in the construction of this Agreement. The Parties acknowledge and agree that this Agreement was drafted jointly. It is agreed and understood that the general rule pertaining to construction of contracts, that ambiguities are to be construed against the drafter, will not apply to this Agreement.

14. **Consultation with Attorney; Voluntary Agreement.** Company and Haney each acknowledge that: (a) Sirius XM has advised each of them of their respective rights to consult with an attorney, (b) each of Company and Haney has carefully read and fully understands all of the provisions of this Agreement, and (c) each of Company and Haney is entering into this Agreement (including, without limitation, the its Release) knowingly, freely and voluntarily in exchange for good and valuable consideration.

*[Signature Page Follows]*

5

CONFIDENTIAL

HANEY000073

IN WITNESS WHEREOF, the Parties have executed this Agreement with effect as of the Effective Date.

Hank Haney Media, LLC

By: _____
Name: Hank Haney
Title: President

_____
Hank Haney

Sirius XM Radio Inc.

By: _____
Scott A. Greenstein
President and Chief Content Officer

CONFIDENTIAL                                                                                          HANEY000074