UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-CV-63108-RAR

HANK HANEY and
HANK HANEY MEDIA, LLC,

        Plaintiffs,

    vs.

PGA TOUR, INC.,

        Defendant.

                                 /

## DEFENDANT PGA TOUR, INC.'S
## REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant PGA TOUR, Inc. ("PGA TOUR"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, respectfully submits the following Reply Statement of Undisputed Material Facts in response to Plaintiffs' Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment.

### PGA TOUR's Response to Plaintiffs' Additional Facts

51.      Disputed in part. PGA TOUR does not dispute that Haney authored and published *The Big Miss* in 2012, which is a book about Haney's time as Tiger Woods's swing coach from 2004 through 2010. PGA TOUR, however, does dispute the remaining assertions made in Plaintiffs' Additional Fact No. 51. The portions of Jeremy Aisenberg's deposition testimony that Plaintiffs cite do not support Plaintiffs' assertions in Additional Fact No. 51. Aisenberg's deposition testimony is otherwise based on inadmissible hearsay.

52.      Disputed. The portions of Irving Azoff's ("Azoff") deposition testimony that Plaintiffs cite do not support Plaintiffs' assertions in Additional Fact No. 52 that PGA TOUR "demanded [Haney's] termination," or that "PGA TOUR forced Sirius XM to terminate Plaintiffs." The portions of Azoff's deposition testimony that Plaintiffs cite also do not support Plaintiffs' assertions in Additional Fact No. 52 that "Haney had become

1

Sirius XM's most popular talent on the Sirius golf network." To the extent Azoff testified that Haney's radio show "was very successful, and the audience was growing," Azoff's testimony is based on inadmissible hearsay because "[Greenstein] led [Azoff] to believe that." (Ex. 6 to Plaintiffs' Statement of Material Facts, Azoff Deposition, 15:2-7.)[1] Additional Fact No. 52 is also immaterial.

53.     Disputed in part. The document Plaintiffs cite in support of Additional Fact No. 53 does not support that this email was sent to "all Sirius XM PGA Tour Radio talent and producers, business managers of all talent, Sirius XM programming executives including the VP of Sports, Steve Cohen, and Greenstein." Additional Fact No. 53 is also immaterial.

54.     Disputed. The document and deposition testimony Plaintiffs cite in support of the statement "On May 29, 2019, the day of Haney's broadcast, Joel Schuchmann ('Schuchmann'), the PGA TOUR's Vice President of Communications, described a 'loose' affiliation with Sirius/XM' and wrote that 'we don't control these shows,'" do not support this additional fact. The document and deposition testimony Plaintiffs cite in support of the statement "Again, on May 30th, Schuchmann confirmed in an email, 'The network is not owned or operated by the PGA TOUR so we don't have any oversight on items such as talent, so that complicates the situation," do not support this additional fact. The document Plaintiffs cite in support of the final statement in Additional Fact No. 54 also does not support this additional fact. Otherwise disputed because although PGA TOUR did not exercise day-to-day control and oversight of the talent on SiriusXM PGA TOUR Radio, the operative License Agreement between SiriusXM and PGA TOUR provides PGA TOUR with the right of consent to all programming aired on that channel in exchange for SiriusXM's ability to use PGA TOUR's intellectual property, including PGA TOUR's trademarks, in connection with that channel. (D.E. 83, Ex. 1-1 at Article I, Section 1.01 (definitions of "Channel" and "Programming"); Article II, Section 2.01(f); and Article

---

[1] Hereafter, Plaintiffs' Statement of Material Facts in Opposition to PGA TOUR's Motion for Summary Judgment will be referred to as "Plaintiffs' SOF."

4849-4748-5416

VIII, Section 8.03(b)).  PGA TOUR also disputes Additional Fact No. 54 because it is inconsistent with Greenstein's deposition testimony.  (Ex. 1, Greenstein Depo. 15:15-16:1.)

55.　　　Disputed in part.  The deposition testimony Plaintiffs cite in support of Additional Fact No. 55 does not support that removing Haney from SiriusXM PGA TOUR Radio "undermined the success of [Sirius XM's] golf network, and was contrary to promises Greenstein had made to Haney regarding Haney's freedom to talk freely on his show."  The deposition testimony Plaintiffs cite from Jeremy Aisenberg ("Aisenberg") is also inadmissible hearsay, and is inconsistent with Greenstein's deposition testimony that he did not recall ever making any such statement to Haney.  (Ex. 1, Greenstein Dep., 43:25-44:13.)

56.　　　Disputed.  The document and deposition testimony Plaintiffs cite do not support the factual statements in Additional Fact No. 56.  The deposition testimony Plaintiffs cite in support of Additional Fact No. 56 also constitutes inadmissible hearsay.

57.　　　Undisputed and immaterial.

58.　　　Undisputed and immaterial.  Additional Fact No. 58 should, however, be disregarded as inadmissible hearsay.

59.　　　Disputed and immaterial.  The documents and deposition testimony Plaintiffs cite do not support the following factual statements made in Additional Fact No. 59: (1) "The released parties [in the Settlement Agreement between Plaintiffs and Sirius XM] purposely excluded the PGA TOUR…This intentional drafting was a result of Plaintiffs and Sirius XM's recognition of the PGA TOUR's wrongful insistence on having Plaintiffs terminated;" (2) "Greenstein reiterated that there was a specific carve-out so that Haney justifiably could pursue remedies against the PGA TOUR."  Plaintiffs also do not attach the referenced deposition testimony from Azoff, which should be disregarded.

60.　　　Disputed.  While PGA TOUR does not dispute that it and Sirius XM are parties to the License Agreement, PGA TOUR does dispute Plaintiffs' characterization of PGA TOUR's rights pursuant to the

License Agreement.  The operative License Agreement between SiriusXM and PGA TOUR provides PGA TOUR with the right of consent to all programming aired on that channel in exchange for SiriusXM's ability to use PGA TOUR's intellectual property, including PGA TOUR's trademarks, in connection with that channel. (D.E. 83, Ex. 1-1 at Article I, Section 1.01 (definitions of "Channel" and "Programming"); Article II, Section 2.01(f); and Article VIII, Section 8.03(b)).  The License Agreement also provides that Sirius XM has the following affirmative obligation: "Sirius XM shall ensure that Sirius XM and its representatives do not incorporate into the Programming any material which is:…(iv) otherwise detrimental to [PGA] TOUR or inconsistent with [PGA] TOUR's standards of appropriateness as may be provided to Sirius XM in writing…" (*Id.* at Article II, Section 2.01(f)(iv).)  The deposition testimony Plaintiffs cite also does not in any way support the factual statements made in Additional Fact No. 60.

61.     Disputed.  The complete provision of Section 2.01(f) of the License Agreement Plaintiffs reference states: "Sirius XM shall ensure that Sirius XM and its representatives do not incorporate into the Programming any material which is…(iv) otherwise detrimental to [PGA] TOUR or inconsistent with [PGA] TOUR's standards of appropriateness as may be provided to Sirius XM in writing…"  (D.E. 83, Ex. 1-1 at Article II, Section 2.01(f)(iv).)  The deposition testimony Plaintiffs cite otherwise does not support the factual statements made in Additional Fact No. 61 that PGA TOUR "has never weighed in on Programming, and has thus abdicated any role which it may have negotiated about determining who would be given a show on the air."

62.     Disputed.  The operative License Agreement between SiriusXM and PGA TOUR provides PGA TOUR with the right of consent to all programming aired on that channel in exchange for SiriusXM's ability to use PGA TOUR's intellectual property, including PGA TOUR's trademarks, in connection with that channel.  (D.E. 83, Ex. 1-1 at Article I, Section 1.01 (definitions of "Channel" and "Programming"); Article II, Section 2.01(f); and Article VIII, Section 8.03(b)).  The clear terms of the License Agreement speak for

4

themselves and are consistent with SiriusXM's understanding of PGA TOUR's rights under the License Agreement. (Ex. 1, Greenstein Dep. 15:15-16:1.)

63.     Disputed.   The portions of Greenstein's deposition testimony Plaintiffs cite show that Greenstein did not testify that "the PGA TOUR could not exercise 'any veto power or authority over the content of a show' and had never attempted to interfere with content or assert discipline about the content of a show 'other than [with] Mr. Haney." The portions of Greenstein's deposition testimony Plaintiffs cite also do not support that "[t]he License Agreement does not provide the PGA TOUR with any control over the content of shows on Sirius XM." In fact, Greenstein testified that his "recollection was, once [Sirius XM] w[as] on notice that's something [PGA TOUR] objected to, [PGA TOUR] had the right to take it off the channel. And so clearly Mr. Monahan was objecting to someone on the channel, and we were on notice at that point." (Ex. 1, Greenstein Dep. 15:15-16:1.)

64.     Disputed.  The record material Plaintiffs cite do not support Additional Fact No. 64.  Otherwise, and as stated previously, the operative License Agreement between SiriusXM and PGA TOUR provides PGA TOUR with the right of consent to all programming aired on that channel in exchange for SiriusXM's ability to use PGA TOUR's intellectual property, including PGA TOUR's trademarks, in connection with that channel. (D.E. 83, Ex. 1-1 at Article I, Section 1.01 (definitions of "Channel" and "Programming"); Article II, Section 2.01(f); and Article VIII, Section 8.03(b)).

65.     Disputed and immaterial.  Plaintiffs attempt to characterize Monahan and Neal as lacking any knowledge about LPGA players is not supported by the actual deposition testimony Plaintiffs cite in support of Additional Fact No. 65. Furthermore, it is wholly immaterial to whether PGA TOUR has a business relationship with the LPGA, and therefore, a genuine financial or beneficial interest in its business relationship with the LPGA.

4849-4748-5416

66.     Disputed.  The deposition testimony Plaintiffs cite does not support the factual statements made in Additional Fact No. 66.  Plaintiffs also mischaracterize Monahan's deposition testimony regarding the commercial aspects of the business relationship between PGA TOUR and the LPGA.

67.     Undisputed.

68.     Undisputed and immaterial.

69.     Disputed and immaterial.  The document Plaintiffs cite does not support the factual statements made in Additional Fact No. 69, and otherwise is inadmissible hearsay.

70.     Undisputed and immaterial.

71.     Disputed and immaterial.  The deposition testimony from Greenstein that Plaintiffs cite in support of Additional Fact No. 71 does not—and could not—support the factual statements made in Additional Fact No. 71.  Additional Fact No. 71 should be disregarded as unsupported by admissible record evidence.

72.     Disputed and immaterial.  To the extent Plaintiffs have offered Aisenberg's "expert" analysis and testimony, including regarding the "sentiment analysis" Aisenberg purportedly conducted as part of his work as an expert for Plaintiffs, PGA TOUR has challenged the admissibility of that testimony in its pending Motion to Exclude that testimony.  (D.E. 80, p. 13, and Ex. F attached thereto.)  The factual statements made in Additional Fact No. 72 also have no relevance to or bearing on whether PGA TOUR's actions in response to Haney's comments during Haney's May 29, 2019, broadcast on SiriusXM PGA TOUR Radio were justified as a matter of law.

Dated: May 10, 2021

Respectfully submitted,

*/s/ William E. Davis*
William E. Davis
Florida Bar No. 191680
wdavis@foley.com
Angelica L. Novick
Florida Bar No. 105069
anovick@foley.com
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131-1832
Telephone: (305) 482-8400
Facsimile: (305) 482-8600

Kelly S. Milliron
Florida Bar No. 1018917
kmilliron@foley.com
Foley & Lardner LLP
1 Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-2000
Facsimile: (904) 359-8700
*Counsel for Defendant, PGA TOUR, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2021, I electronically served the foregoing on all counsel of record via the e-mail addresses listed on the attached Service List.

*/s/ William E. Davis*
William E. Davis

7

4849-4748-5416

<u>SERVICE LIST</u>
Hank Haney and Hank Haney Media, LLC v. PGA TOUR, Inc.

<u>Case No. 0:19-cv-63108-rar</u>

**Attorneys for Plaintiffs:**

**Riley W. Cirulnick**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
Fax: 954-462-4300
rcirulnick@rprslaw.com

**Peter R. Ginsberg**
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, NY 10022
(212) 730-7700
pginsberg@mrllp.com

**Arthur Halsey Rice**
Rice Pugatch Robinson & Schiller
101 NE 3 Avenue
Suite 1800
Fort Lauderdale, FL 33301
305-379-3121
Fax: 305-379-4119
arice.ecf@rprslaw.com
arice@rprslaw.com

8
