UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-CV-63108-RAR

HANK HANEY and
HANK HANEY MEDIA, LLC,

      Plaintiffs,

vs.

PGA TOUR, INC.,

      Defendant.
_____/

## DEFENDANT PGA TOUR, INC.'S OMNIBUS MOTION *IN LIMINE*

Defendant PGA TOUR, Inc. ("PGA TOUR") moves *in limine* for entry of an order precluding Plaintiffs Hank Haney ("Haney") and Hank Haney Media, LLC ("HHM") (collectively, "Plaintiffs") from introducing or attempting to introduce the following categories of evidence at trial:

(1) testimony regarding the legal effect or meaning of the License Agreement between PGA TOUR and Sirius XM;

(2) testimony or documents regarding the social media sentiment analyses referenced as part of Jeremy Aisenberg's "expert" testimony and in Plaintiffs' opposition to PGA TOUR's Motion to Exclude Plaintiffs' Experts' Testimony;

(3) non-expert opinion testimony from Plaintiffs' purported expert witnesses, Jeremy Aisenberg and Patrick McGee, as set forth in their expert disclosures;

(4) hearsay testimony from Plaintiffs regarding: (i) PGA TOUR's alleged interference with sales of Haney's book, *The Big Miss*; (ii) PGA TOUR's alleged pressure on The Golf Channel to discontinue Haney's show, "The Haney Project;" and (iii) PGA TOUR's

1

> alleged efforts to influence Avis that allegedly resulted in Avis cancelling an unspecified "program" with Haney;
>
> (5) testimony or documents regarding distinguishable and irrelevant incidents involving non-parties Kelly Tilghman, Kevin Kisner, and Justin Thomas;
>
> (6) testimony or references to the size of PGA TOUR's counsels' law firm;
>
> (7) testimony or references regarding the effect of the jury's verdict on the parties; and
>
> (8) "Golden Rule" testimony or references.

In support thereof, PGA TOUR states as follows:

## SUMMARY OF ARGUMENT

PGA TOUR seeks to preclude Plaintiffs from introducing or attempting to introduce evidence in connection with the above-enumerated categories. If the Court were to allow Plaintiffs to introduce evidence in Category 1, the Court would allow Plaintiffs to introduce irrelevant evidence and to otherwise usurp or infringe on the Court's role with respect to instructing the jury. The information referenced in Category 2 (social media sentiment analyses) is inadmissible hearsay that Plaintiffs will not be able to authenticate for purposes of trial. As such, allowing the referenced social media sentiment analyses to be introduced at trial would only serve to confuse and potentially mislead the jury. The information referenced in Category 3 would allow Plaintiffs to introduce irrelevant or unfairly prejudicial testimony through purported "experts" who lack knowledge and support to substantiate their testimony, which would pose the risk of misleading the jury. The information referenced in Category 4 would allow Plaintiffs to introduce impermissible hearsay testimony regarding PGA TOUR's alleged prior efforts to interfere in Haney's business endeavors. Finally, the testimony or documents in Categories 5 through 8 are both irrelevant and unfairly prejudicial in violation of Fed. R. Evid. 401 and 403. Thus, and as

discussed more fully below, PGA TOUR respectfully requests that the Court enter an Order excluding testimony and documents related to these categories because they are irrelevant, unfairly prejudice PGA TOUR, and otherwise inadmissible.

## BACKGROUND

This action arises from Haney's May 29, 2019, broadcast (the "Broadcast") on the SiriusXM PGA TOUR Radio channel. During the Broadcast, Haney made several offensive and insensitive remarks about the upcoming U.S. Women's Open. The following day, in a joint statement with PGA TOUR, SiriusXM Radio, Inc. ("SiriusXM") announced Haney's suspension from broadcasting on that PGA TOUR-branded station. Shortly thereafter, Haney opted to pursue launching a podcast with iHeartMedia, Inc. ("iHeartMedia"). SiriusXM and Plaintiffs subsequently executed a Settlement Agreement that resulted in a buyout of the remaining term of Plaintiffs' Letter Agreement with SiriusXM. Plaintiffs' Letter Agreement with SiriusXM would have expired on its own terms on February 15, 2021. Haney began broadcasting *The Hank Haney Podcast* with iHeartMedia in or about September of 2019. Plaintiffs initiated this lawsuit against PGA TOUR in December of 2019, alleging that PGA TOUR tortiously interfered with their contractual and business relationships with SiriusXM after the Broadcast.

## ARGUMENT

### A. Legal Standard

"The real purpose of a Motion In Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). Motions *in limine* "avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury." *In re Blue Crest Holding Asset, Inc.*,

3

No. 17-21011, 2018 WL 1463644, at *1 (S.D. Fla. Jan. 24, 2018).  Thus, motions *in limine* will "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Smart v. City of Miami*, No. 13-24354, 2015 WL 11202640, at *1 (S.D. Fla. May 28, 2015) (internal quotation omitted).

"Any evidence, tending to make the existence of any fact of consequence more probable or less probable, is relevant and admissible, except as the Federal Rules of Evidence otherwise provide." *Id.*, 2015 WL 11202640 at *1; *see also* Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402. Under Federal Rule of Evidence 403, otherwise admissible evidence may be excluded "when the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence."  *Chavez v. Arancedo*, No. 17-20003, 2018 WL 4627302, at *1 (S.D. Fla. Sept. 26, 2018); *see also* Fed. R. Evid. 403.

**B. Plaintiffs Should be Precluded from Offering Testimony Regarding the Legal Effect or Meaning of the License Agreement.**

PGA TOUR anticipates that Plaintiffs will seek to offer evidence and testimony, including from Aisenberg, regarding the interpretation and legal effect of certain provisions in PGA TOUR's License Agreement with SiriusXM, including with respect to PGA TOUR's rights with respect to programming aired on the SiriusXM PGA TOUR Radio channel.  Indeed, Aisenberg's Amended Expert Disclosure indicates that Aisenberg intends to offer testimony regarding "[t]he industry distinction between 'programming' and 'content,' and the application of those terms to the PGA TOUR – Sirius XM relationship, and the right of the PGA TOUR to interfere with Sirius XM content."  A true and correct copy of Aisenberg's Amended Expert Disclosure is attached hereto as **Exhibit A**.  During his expert deposition, Aisenberg testified as follows:

4

| | | |
|---|---|---|
| Q.: | | Have you reviewed the license agreement between SiriusXM and PGA TOUR? |
| A.: | | I have. |
| Q.: | | Okay. So tell me what your opinion is or that you plan to express regarding that bullet point. |
| A.: | | That the PGA TOUR has the ability to approve the programming that is added to the schedule for SiriusXM PGA Tour Radio. Once those programs are determined, the data content of those programs are determined, the data content of those programs is subject to the management and production, supervision of the SiriusXM PGA TOUR Radio executive team. |
| Q.: | | Is your opinion, as you've just expressed it, predicated upon your analysis or review of the license agreement? |
| A.: | | Yes, the license – yes, it is, the licensing agreement specifically references programming. It does not reference content. |

(**Exhibit B**, Aisenberg Dep., March 31, 2021, pp. 91:24 – 92:15.)

"Generally speaking, interpretation of a written contract is a matter of law to be determined by the court." *McMahan Securities Co. L.P. v. FB Foods, Inc.*, No. 8:04-cv-1791-T-24TGW, 2007 WL 473666, at *2 (S.D. Fla. Feb. 8, 2007) (internal citation omitted) (excluding opinion testimony regarding construction of an agreement at issue in the case). "Expert opinion testimony regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible." *Ramjeawan v. Bank of America Corp.*, No. 09-20963-CIV, 2010 WL 1645097, at *1 (S.D. Fla. Apr. 21, 2010) (precluding opinion testimony offered to interpret an agreement at issue in the case) (internal citation and quotation omitted). Allowing Plaintiffs to introduce testimony and evidence (including from Aisenberg, who is not a lawyer and otherwise has no legal training) regarding the interpretation and legal effect of any provision in the License Agreement or the relationship between Sirius XM and PGA TOUR would risk misleading and confusing the jury regarding an issue of law for the Court's determination and instruction. As such, Plaintiffs should be precluded

5

from offering testimony and evidence regarding the interpretation and legal effect of any provision of the License Agreement between SiriusXM and PGA TOUR.

**C. Plaintiffs Should be Precluded from Offering Testimony or Documents Regarding the Social Media Sentiment Analyses.**

The Court should preclude Plaintiffs from presenting any so-called "social media sentiment analyses" as part of their evidence at trial. Several of the "social media sentiment analyses" Plaintiffs have proffered to date were attached as exhibits to the parties' *Daubert* briefing and used as exhibits in the deposition of PGA TOUR's expert witness, Jonathan Orszag. *See* ECF No. 80, at Exhibit F attached thereto (filed under seal), and ECF No. 95, at Ex. 6 attached thereto (filed under seal).[1] Plaintiffs will likely seek to offer these "social media sentiment analyses" as evidence that negative public perception regarding Haney would have quickly neutralized shortly after his May 29, 2019, Broadcast in which he made the comments that lead to Haney's suspension from the SiriusXM PGA TOUR Radio channel. In addition to being inadmissible hearsay, the "social media sentiment analyses" should also be excluded from trial, as well as testimony derived from them, because Plaintiffs will be unable to authenticate those analyses. Generally, a witness with knowledge may authenticate evidence by "[t]estimony that the item is what it is claimed to be." Fed. R. Evid. 901(b)(1). For example, printouts of web postings that bear a web address and the date printed may generally be authenticated by a witness who saw and printed the web postings "for the limited purpose of proving that the postings had appeared on the world wide web on the

---

[1] As mentioned in PGA TOUR's Reply in Support of its Motion to Exclude (ECF No. 100, n. 3), Ex. 6 to Plaintiffs' Response in Opposition to PGA TOUR's Motion to Exclude Testimony of Aisenberg and McGee (ECF No. 95) was not produced in discovery, and Plaintiffs should also not be permitted to offer it as evidence at trial on this basis. Moreover, PGA TOUR also requests to exclude the social media sentiment analysis marked as Exhibit 14 during Orszag's deposition, which Plaintiffs marked "Highly Confidential" pursuant to the Confidentiality Stipulation and Protective Order in this case.

6

days that [the witness] personally saw the postings and printed them off the computer." *SMS Audio, LLC v. Belson*, No. 16-81308, 2017 WL 1533971, at *9, n.2 (S.D. Fla. Mar. 20, 2017) (internal citation omitted); *but see Exime v. EW Ventures, Inc.*, No. 08-60099-CIV, 2009 WL 454278, at *2 (S.D. Fla. Feb. 11, 2009) (granting the defendant's motion *in limine* to exclude website printouts because the plaintiff made no effort to show the website printouts were self-authenticating or otherwise admissible through judicial notice, and also noting that the relevancy and probative value of the printouts was uncertain). Plaintiffs will not be able to authenticate these "social media sentiment analyses" because they do not bear any indication of: (1) what the sources are of the data reflected in each sentiment analysis; (2) what sources were excluded from the data reflected in each sentiment analysis; and (3) when each sentiment analysis was created. As such, Plaintiffs should not be allowed to offer the social media analyses themselves, or testimony regarding the "conclusions" they reflect, as evidence at trial.

**D. Plaintiffs Should be Precluded from Offering Purported Experts Aisenberg's and McGee's Testimony on Various Topics Identified in Each Expert's Respective Disclosure.**

Plaintiffs intend for Aisenberg and McGee to testify on a variety of "topics" under the guise that such testimony is relevant to different issues in the case, which are identified in each expert's respective amended disclosure.[2] For the reasons discussed more below, and to the extent Plaintiffs have characterized Aisenberg and McGee as "hybrid" fact-expert witnesses, Plaintiffs should be precluded from offering Aisenberg's and McGee's respective testimony at trial regarding the various "topics" because such testimony is irrelevant and unreliable, and therefore inadmissible. For example, Aisenberg intends to testify about "SiriusXM's business prior to Plaintiffs joining

---

[2] True and correct copies of McGee's Amended Disclosures (hereafter, "McGee Amended Disclosure") is attached hereto as **Exhibit C**.

4850-8248-1899

the outlet and the impact of Haney's radio show on SiriusXM's financial condition." (Ex. A, Aisenberg Amended Disclosure, p. 2.) However, neither Aisenberg's Amended Disclosure nor his deposition testimony provides any further detail about any facts or documents that support his opinion on these matters and thus there is no way for PGA TOUR to challenge the factual basis for such opinion. (Ex. B, Aisenberg Dep., pp. 83:1 – 84:11.) In fact, Aisenberg testified that he relied upon data about SiriusXM's popularity prior to Haney's radio show and after Haney's suspension, yet Plaintiffs have produced no such documents or data in this action. *Id.* Further, Aisenberg did not identify any facts supporting his opinion, such as historical program ratings or monetary figures associated with Sirius XM's business. *Id.* Without access to the documents Aisenberg reviewed or a clear statement of the facts he relied upon, there is no way to test or evaluate the reliability of the opinions Aisenberg derived from such information, including during cross examination at trial.

Aisenberg's other opinions suffer from the same type of conclusory reasoning unsupported by any factual support. Aisenberg claims to have performed analyses of "SiriusXM's monetization," "Haney's monetization," and the "immediate and long-term financial and professional damage sustained by Plaintiffs," yet Aisenberg provides no financial analysis, no numbers, and no documents supportive of these opinions beyond his damages calculations, the flaws of which are described at length in PGA TOUR's Motion to Exclude Testimony of Jeremy Aisenberg and Patrick McGee. (*Id.*, pp. 85:10 – 87:5; Dkt. 80.) Similarly, Aisenberg opines that he has "specific data" and "reports from advertisers" reflecting the financial and listenership impact on SiriusXM in reaction to the Broadcast if Haney had not left his radio show on SiriusXM's PGA TOUR Radio; yet, he provides no such documents nor does he explain what information he derived from such data or reports. (*Id.*, p. 99:3 – 17.) Aisenberg should not – and

8

cannot – be permitted to provide expert testimony on these and other vague and unsubstantiated topics at trial, as doing so exposes PGA TOUR to potential substantial prejudice in the form of jury confusion.

McGee, in turn, should be precluded from providing expert testimony regarding whether the comments Haney made during the Broadcast would have had a negative effect on the PGA TOUR's brand. During his deposition, McGee testified that, in his "expert opinion," Haney's comments during the Broadcast would not have had a negative effect on the PGA TOUR's brand. (**Exhibit D**, McGee Dep., pp. 41:22 – 43:12; 45:21 – 46:7.) As with his testimony regarding Plaintiffs' damages, McGee's testimony on this point is unsupported and unreliable. During his deposition, McGee testified that he reviewed generic, undisclosed "information" that led him to reach a conclusion regarding whether he "believed" Haney's May 29, 2019, comments "would have a negative effect on the PGA [TOUR] brand." (*Id.* 41:22 – 42:18.) On this undisclosed foundation, McGee concluded that Haney's May 29, 2019, comments "would not" have had a negative effect on PGA TOUR's brand. (*Id.* at 42:5 – 20.) McGee did not specify in his deposition or in his Amended Disclosure what information he reviewed and relied upon, the source of that information, and how that information, combined with his knowledge, skill, and/or experience, lead to his conclusion. As such, McGee's expert opinion lacks any indicia of reliability, which requires its exclusion.

Simply put, both Aisenberg's and McGee's testimony on topics that are irrelevant to the case and wholly unsupported by fact or personal knowledge should be excluded because they are unhelpful and misleading to the jury. Moreover, the fact that Plaintiffs intend to offer testimony from Aisenberg and McGee under the guise that they are "experts" amplifies the potential prejudice to PGA TOUR if their testimony on these topics is not precluded. "Simply put, expert

4850-8248-1899

testimony may be assigned talismanic significance in the eyes of law jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead and confuse." *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

### E. Plaintiffs Should be Precluded from Offering Hearsay Testimony Regarding PGA TOUR's Alleged Prior Interference with Haney's Business Endeavors.

Although Plaintiffs alleged in their Complaint that "PGA TOUR has long attempted to disrupt and interfere in Haney's business," (ECF No. 1, ¶ 29), Plaintiffs have not proffered any evidence to support these allegations other than Haney's and Aisenberg's impermissible hearsay testimony. Specifically, Plaintiffs alleged that: (1) PGA TOUR's interference in Haney's business began in 2012 when Haney released his book, *The Big* Miss and PGA TOUR induced both "PGA Tour Superstores" and "PGA Tour Shops" to cancel book orders (*Id.* at ¶¶ 29, 32); (2) PGA TOUR pressured the Golf Channel to discontinue Haney's show, "The Haney Project," in 2013 (*Id.* at ¶ 33); and (3) PGA TOUR "exerted influence" that resulted in Avis cancelling an unspecified "program" with Haney (*Id.* at ¶ 34.) As discussed further below, Plaintiffs should be precluded from attempting to introduce Haney's and Aisenberg's testimony in support of these allegations at the trial in this case because their testimony constitutes classic, inadmissible hearsay under Fed. R. Evid. 802.

Fed. R. Evid. 801(c) defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In turn, Fed. R. Evid. 802 states "[h]earsay is not admissible" unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the United States Supreme Court provide otherwise. PGA TOUR anticipates that Plaintiffs will attempt to introduce the following testimony at trial to support the allegations in

10

their Complaint regarding PGA TOUR's purported prior interference with Haney's business endeavors, none of which is admissible under Fed. R. Evid. 802 or any hearsay exception.

> 1. *Testimony that PGA TOUR induced both "PGA Tour Superstores" and "PGA TOUR Shops" to cancel orders of* The Big Miss

According to the Complaint, PGA TOUR's interference with Haney's business endeavors began in 2012 when Haney released his book, *The Big Miss* and PGA TOUR induced both "PGA Tour Superstores" and "PGA Tour Shops" to cancel book orders. (ECF No. 1, ¶¶ 29, 32.) Plaintiffs admitted to having no personal knowledge to support this allegation, and indicated that Haney's agent, Aisenberg, had knowledge to support this allegation. (**Exhibit E**, Haney Dep., pp. 35:11-37:22.) Aisenberg, in turn, testified in pertinent part that executives with the publisher of *The Big Miss* told him "that…someone associated with PGA T[OUR] called the PGA Tour Shops and said that Tour-related enterprise shouldn't be supporting this book…." (**Exhibit F**, Aisenberg Dep., January 12, 2021, pp. 19:3 – 21:6.) Notably, Aisenberg also testified that he did not directly confirm with the PGA TOUR Shops that PGA TOUR made any such call, and that Aisenberg "had no dealings with [PGA Tour Shops] directly ever in [his]…career." (*Id.* pp. 22:9-12; *see also* pp. 25:20-25.) Both Aisenberg's and Plaintiffs' testimony on this subject are textbook examples of hearsay (and also hearsay-within-hearsay)—statements made by declarants not testifying at the trial offered to prove the truth of the matter asserted (that PGA TOUR interfered with orders of *The Big Miss*). The Court should, therefore, preclude Plaintiffs from offering such testimony at trial (through Haney, Aisenberg, or otherwise).

> 2. *Testimony that PGA TOUR pressured the Golf Channel to discontinue Haney's show, "The Haney Project"*

Plaintiffs also alleged in their Complaint that in 2013, PGA TOUR pressured the Golf Channel to discontinue Haney's show, "The Haney Project." (ECF No. 1, ¶ 33.) Plaintiffs also

11

testified that Haney did not speak with anyone affiliated with the Golf Channel regarding "The Haney Project" being discontinued, and instead, Aisenberg "did that." (Ex. E, Haney Dep. p. 173:6 – 25.)  When asked at his deposition whether PGA TOUR brought "pressure to bear on the Golf Channel" in connection with "The Haney Project," Aisenberg responded "Not that I can name, specifically, no.  Not that I'm aware of."  (Ex. F, Aisenberg Dep. p. 42:14 – 18.)  Aisenberg otherwise testified that he spoke with representatives of the Golf Channel regarding the decision not to renew "The Haney Project," and those representatives told him the decision was motivated by the Golf Channel's desire to "turn over a new leaf in their relationship with Tiger [Woods]." (*Id.* pp. 43:1 – 45:10.)  Not only have Plaintiffs failed to provide any testimony regarding PGA TOUR's alleged involvement with the Golf Channel's decision to discontinue "The Haney Project," the testimony Plaintiffs have provided also consists of irrelevant and inadmissible hearsay.  Plaintiffs should also be precluded from offering this inadmissible testimony at trial.

> 3. *Testimony that PGA TOUR "exerted influence" that resulted in Avis cancelling an unspecified "program" with Haney*

Finally, Plaintiffs alleged in their Complaint that "[t]he PGA TOUR yet again exerted influence in 2016 to have Avis cancel another program with Haney."  (ECF No. 1, ¶ 34.)  Plaintiffs testified during their deposition that "we were led to believe that we were on our way to a very lucrative, longstanding relationship with Avis, and that never materialized.  And it was told to me by Jeremy Aisenberg that that was because the PGA Tour told Avis they…did not want them doing anything with Hank Haney."  (Ex. E, Haney Dep. pp. 38:17 – 39:22.)  Plaintiffs further testified anything Haney knows about the allegations pertaining to Avis "is derived from [Haney's] conversations with…Aisenberg."  (*Id.* p. 39:19-22.)  Aisenberg, in turn, testified that Avis's representatives told Aisenberg that PGA TOUR "presented alternative partners" that PGA TOUR wanted Avis to explore pursuing marketing efforts with.  (Ex. F, pp. 28:14 – 35:19.)  As with the

12

above examples, again Plaintiffs are expected to offer such hearsay (and hearsay-within-hearsay) testimony to support Plaintiffs' allegations regarding PGA TOUR's alleged interference with Plaintiffs' prior business dealings with Avis.

PGA TOUR respectfully requests a pre-trial ruling from the Court precluding Plaintiffs from introducing the above-mentioned hearsay testimony (through Haney, Aisenberg, or otherwise) regarding alleged interference by PGA TOUR in Haney's prior business endeavors.  Even if such testimony were ultimately excluded after a contemporaneous objection at trial, even its introduction before the jury risks unfairly prejudicing PGA TOUR by allowing the jury to become aware of such testimony without affording PGA TOUR an opportunity to cross-examine the respective alleged declarants, who largely remain unidentified to PGA TOUR.  Put simply, allowing Plaintiffs' counsel to ask questions even eliciting such hearsay testimony, coupled with any mention of PGA TOUR's alleged prior interference during Plaintiffs' opening statements, risks confusing the jury and prejudicing PGA TOUR, who will not have an opportunity to cross-examine the purported declarants.  This is precisely the type of prejudice that motions *in limine* are designed to avoid.

**F. Plaintiffs Should be Precluded from Offering Testimony or Documents Regarding Incidents Involving Non-parties Kelly Tilghman, Kevin Kisner, and Justin Thomas.**

Throughout the pendency of this case, Plaintiffs have attempted to draw an inappropriate comparison between the circumstances surrounding Haney's suspension from broadcasting on the SiriusXM PGA TOUR Radio channel and the circumstances surrounding incidents involving non-parties Kelly Tilghman ("Tilghman"), a former sportscaster on The Golf Channel; Kevin Kisner ("Kisner"), a PGA TOUR player; and Justin Thomas ("Thomas"), another PGA TOUR player. However, the incidents Plaintiffs seek to compare to the circumstances surrounding Haney's suspension are so distinct from the incidents involving Tilghman, Kisner, and Thomas as to be

13

irrelevant. Moreover, even if the Court does deem testimony and evidence regarding those incidents relevant for purposes of trial, the probative value of such testimony and evidence would nevertheless be outweighed by the danger of it unfairly prejudicing PGA TOUR, confusing the issues, and misleading the jury. Such testimony and evidence should not be permitted to reach the jury, and should be excluded as irrelevant and unfair prejudicial under Fed. R. Evid. 401 and 403.

In January of 2008, during a telecast on The Golf Channel, Tilghman commented that young golf players competing against Tiger Woods should "lynch [Woods] in a back alley." The Golf Channel ultimately suspended Tilghman from the air for two weeks following that incident. At the deposition of PGA TOUR's Commissioner, Jay Monahan ("Monahan"), Plaintiffs' counsel tried to examine Monahan regarding this topic. However, Monahan testified that he "was not working at the PGA TOUR at the time" this incident occurred in 2008, and that during his tenure at the PGA TOUR Monahan has not had any discussions regarding how the PGA TOUR did or did not react to Tilghman's comments. (**Exhibit G**, Monahan Dep. pp. 199:15-200:24.) Similarly, Plaintiffs' counsel tried to examine PGA TOUR's Senior Vice President of Communications, Laura Neal ("Neal") regarding this topic during her deposition. (**Exhibit H**, Neal Dep. pp. 143:16-145:2.) Neal testified that she was not involved in the PGA TOUR's reaction to Tilghman's comments, and that she did not remember the specifics of how PGA TOUR reacted to those comments in 2008. (*Id.* p. 144:12-24.) As such, no PGA TOUR witness deposed during discovery has any pertinent knowledge regarding PGA TOUR's response to Tilghman's comments more than 13 years ago. Nevertheless, PGA TOUR anticipates Plaintiffs will seek to examine PGA TOUR's witnesses at trial regarding such incidents, although Monahan and Neal have no knowledge regarding the events involving Tilghman that Plaintiffs purport are relevant to this case.

4850-8248-1899

In September of 2020, more than 15 months after the incident at issue in this case, Kisner responded to a tweet from Rex Chapman, a former NBA player, regarding Chapman's personal experiences during the COVID-19 pandemic. Specifically, Chapman tweeted that his "friends['] parents have died from Covid & Covid related issues. [His] parents are in & out of the hospital. One of [his] kids tested positive for Covid [that day]." Kisner responded, using his personal Twitter account, "Guess they can't follow the guidelines." A true and correct copy of this Twitter exchange is attached hereto as **Exhibit I**. Kisner issued a written apology later the same day to Chapman and to anyone else who was hurt by Kisner's response to Chapman's tweet. A true and correct copy of that written apology is attached hereto as **Exhibit J**. Critically for purposes of this motion, Kisner's response to Chapman's tweet was made using Kisner's personal Twitter account, and was not—unlike Haney's May 29, 2019, comments—made as part of any PGA TOUR-branded programming.

In January of 2021, Thomas muttered a homophobic slur during a tournament that was picked up on a live microphone. In the wake of that utterance, Thomas took ownership of his actions and immediately apologized. Thomas also lost his sponsorship relationship with Ralph Lauren despite that apology. Thomas's comment occurred after both Monahan's and Neal's depositions, and more than a year and a half after Haney's comments. Nevertheless, PGA TOUR anticipates that Plaintiffs will seek to illicit testimony from both their own and PGA TOUR witnesses at trial regarding Thomas's comments solely for purposes of inflaming the jury. Such testimony should be precluded as irrelevant and unfairly prejudicial pursuant to Fed. R. Evid. 401 and 403.

In sum, testimony and other evidence regarding the above-described incidents should be precluded at trial because it is irrelevant to demonstrating whether PGA TOUR's justification for

its actions in this case is "pretextual." Each of the incidents involving Tilghman, Kisner, and Thomas are materially distinguishable from the circumstances surrounding Haney's suspension. Allowing Plaintiffs to draw their desired comparison between Haney's comments and each of these incidents would not only amount to admitting irrelevant evidence, but it would also be unfairly prejudicial to PGA TOUR, and potentially misleading to the jury.[3]

### G. Plaintiffs Should Not be Allowed to Reference the Size of PGA TOUR's Counsels' Law Firm.

Any reference to the size of PGA TOUR's counsels' law firm would be irrelevant and would be designed to inflame the jury and/or cause prejudice to PGA TOUR. Accordingly, Plaintiffs and their counsel should be precluded from making such references pursuant to Fed. R. Evid. 401 and 403.

### H. Plaintiffs Should be Precluded from Making Reference to the Effect of the Jury's Verdict.

The Court should preclude any reference to or argument regarding the effect that the jury's verdict may have on the parties. The only reason to illicit such testimony would be to inflame the passions of the jury or to otherwise improperly provoke the jury's sympathy in Plaintiffs' favor. This would be improper pursuant to Fed. R. Evid. 403.

### I. Plaintiffs and Their Counsel Should be Precluded from Making Golden Rule References.

A "Golden Rule" argument urges the members of the jury to place themselves in a party's position. Golden Rule arguments are improper because they encourage the jury to depart from

---

[3] In an Order denying Plaintiffs' Motion to Compel documents and testimony regarding the Tilghman and Kisner incidents because Plaintiffs' motion was untimely, Magistrate Judge Strauss noted in a footnote that "the discovery sought appears to be of limited relevance at best, and it is not proportional to the needs of the case." (ECF No. 66, n. 2.) Considering the broad scope of relevance for purposes of discovery, such evidence is even less relevant for purposes of trial.

16

neutrality and to decide the case on the basis of personal interest or bias, rather than on the evidence properly before the jury. *See Shreidell v. Shoter*, 500 So. 2d 228, 233 (Fla. 3d DCA 1986). "The straight golden rule argument—'put yourself in the shoes of my client'—clearly has been banned by binding precedent." *Colman v. Home Depot U.S.A., Inc.*, No. 15-cv-21555-UU, 2016 WL 4543119, at *3 (S.D. Fla. Feb. 8, 2016) (citing *Woods v. Burlington Northern R.R. Co.*, 786 F.2d 1287, 1292 (11th Cir. 1985), *overruled on other grounds by Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1 (1987)).

## CONCLUSION

For the foregoing reasons, PGA TOUR respectfully requests that the Court grant this Omnibus Motion and preclude Plaintiffs from introducing evidence on or referenced the above topics at trial.

## **LOCAL RULE 7.1(A) CERTIFICATE**

Pursuant to Local Rule 7.1(a), counsel for PGA TOUR conferred with counsel for Plaintiffs, who does not agree to the relief requested in this Motion.

Dated: May 31, 2021

Respectfully submitted,

*/s/ Angelica L. Novick*
Angelica L. Novick
Florida Bar No. 105069
anovick@foley.com
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131-1832
Telephone: (305) 482-8400
Facsimile: (305) 482-8600

Michael Gay
Florida Bar No. 938191
mgay@foley.com
111 North Orange Avenue, Suite 1800
Orlando, FL 32801
Telephone: (407) 423-7656
Facsimile: (407) 648-1743

Kelly S. Milliron
Florida Bar No. 1018917
kmilliron@foley.com
Foley & Lardner LLP
1 Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-2000
Facsimile: (904) 359-8700

*Counsel for Defendant, PGA TOUR, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 31, 2021, I electronically served the foregoing on all counsel of record via the e-mail addresses listed on the attached Service List.

*/s/ Angelica L. Novick*
Angelica L. Novick

<u>SERVICE LIST</u>

Hank Haney and Hank Haney Media, LLC v. PGA TOUR, Inc.

<u>Case No. 0:19-cv-63108-rar</u>

**Attorneys for Plaintiffs:**

**Riley W. Cirulnick**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
Fax: 954-462-4300
rcirulnick@rprslaw.com

**Peter R. Ginsberg**
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, NY 10022
(212) 730-7700
pginsberg@mrllp.com

**Arthur Halsey Rice**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3 Avenue
Suite 1800
Fort Lauderdale, FL 33301
305-379-3121
Fax: 305-379-4119
arice.ecf@rprslaw.com
arice@rprslaw.com