UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-CV-63108-RAR

HANK HANEY AND
HANK HANEY MEDIA, LLC,

    PLAINTIFFS,

vs.

PGA TOUR, INC.,

    DEFENDANT.
_____/

## JOINT PRE-TRIAL STIPULATION

Plaintiffs Hank Haney ("Haney") and Hank Haney Media, LLC ("HHM") (collectively, "Plaintiffs") and Defendant PGA TOUR, Inc. ("PGA TOUR") hereby submit this Joint Pre-trial Stipulation pursuant to the Court's Scheduling Order (ECF No. 18), as amended on April 29, 2021 (ECF No. 85) and Rule 16.1(e) of the Local Rules of the United States District Court for the Southern District of Florida.

**1. A Short, Concise Statement of the Case by Each Party**

    a. Plaintiffs' Statement

The PGA TOUR, after years of attacks on Haney and his business interests, exercised its influence and wrongfully imposed its domination of the professional golf world to interfere with Plaintiffs' contractual and business relationships with Sirius XM Radio, Inc. ("Sirius XM"). Despite not being a party to the radio broadcast contract between the Plaintiffs and Sirius XM (the "Talent Agreement"), without any other legal justification, and acting with malice, the PGA TOUR seized on comments Haney made during a radio program to continue its years-long onslaught on Haney's career, ultimately imposing its unique market power and influence to force Sirius XM to

1

terminate the Talent Agreement. All post-event excuses for its wrongful actions are pretextual and the speciousness of those rationalizations is laid bare by the record developed during discovery.

Haney is a professional golf instructor and media expert who coached Tiger Woods ("Woods") for years. In 2012, Haney authored a book, *The Big Miss*, which focused on Haney's time as Woods's swing coach from 2004 through 2010. *The Big* Miss provided an inside look at a professional golfer whose reputation far-outshined his real-life persona. The PGA TOUR recognized that the negative disclosures about Woods would be financially damaging to its brand as well as to the marketability of its highly-aggrandized and protected star. Fearing damage to its own financial interests, the PGA TOUR began campaigning to discredit Haney and his book. As the content of the book became public through previews in 2012, and debuted as #1 on the New York Times bestseller list, the PGA TOUR used its unique power and authority in the golf world to induce both "PGA Tour Superstores" and "PGA Tour Shops" to cancel previously placed orders of *The Big Miss*. The PGA TOUR also induced smaller shops to back out of their preorders for the book.

Despite the PGA TOUR's attempts to disrupt his business ventures, Haney enjoyed great success with Sirius XM. For several years starting in 2013, Haney served as the host of "Hank Haney Golf Radio," a sports radio program on Sirius XM covering news and topics in the world of golf. Plaintiffs' relationship with Sirius XM was governed by the Talent Agreement. The PGA TOUR is not a party to the Talent Agreement. As of the time the PGA demanded his termination, Haney had become Sirius XM's most popular talent on the Sirius golf network.

On his May 29, 2019 broadcast, Haney and a co-host discussed the U.S. Women's Open, which was scheduled to begin the next day. Haney made some remarks during this program about the LPGA Tour and its players regarding an upcoming LPGA event while acknowledging his

2

ignorance about women's professional; golf. While still on the air, Haney learned that some listeners had been offended by Haney's attempt at mocking his own lack of knowledge about the upcoming tournament and favored participants. During this same broadcast, Haney apologized for what he said, and the next day issued a formal, written apology, expressing regret for saying anything that could be considered insensitive. SOF/Ex. __.

In Sirius XM's view, Haney's apology sufficiently rectified any offense he may have committed. Sirius XM's PGA Tour Radio Program Director, Jeremy Davis, declared the controversy over.

Despite Sirius XM's determination—and decision—that Haney's apology was the "end of [the] story" and that no punitive measures were necessary or appropriate, the PGA TOUR seized on this opportunity to punish Haney. The PGA TOUR almost immediately instructed Sirius XM to suspend and essentially terminate Haney from his radio broadcasts. PGA Commission Jay Monahan ("Monahan") pronounced his intentions in an email marked and filed under seal as Exhibit 1-4 to PGA TOUR's SOF, ECF No. 83.

Internal PGA TOUR email traffic from the time period reveals that the PGA TOUR understood that it lacked any legal basis to effectuate this decision but was determined not to be deterred by its lack of a legal basis to strip Haney of his high-profile position on the airwaves. The PGA TOUR bullied Sirius XM until it terminated its contractual and business relationship with Plaintiffs. Sirius XM's leadership was adamantly against such an action, but ultimately determined that PGA TOUR could destroy its own business if it did not adhere to the PGA TOUR's demand to destroy Haney's.

The press statement announcing Plaintiffs' termination, dated May 30, 2019, made it absolutely clear—at Sirius XM's insistence—that the PGA TOUR forced the termination: "[a]t

3

the PGA TOUR's *instruction* Mr. Haney has been suspended from the Sirius XM PGA TOUR Radio Channel." Terminating Haney was contrary to Sirius XM's business interests and undermined the success of its golf network. On July 8, 2019, Plaintiffs and Sirius XM entered into a Settlement Agreement and Release ("Settlement Agreement"). While Plaintiffs provided Sirius XM with a release of any claims, the "Sirius XM Released Parties" was defined to exclude the PGA TOUR. This intentional drafting reflects Defendant's wrongdoing. Scott Greenstein, the head of Sirius XM, reiterated that there was a specific carve-out so that Haney justifiably could pursue remedies against the PGA TOUR.

Because the evidence overwhelmingly establishes that the PGA TOUR forced Haney's termination without any legal justification and out of malice, the PGA TOUR since the commencement of this lawsuit has fabricated a pseudo-concern for cultural appropriateness and conjured up a phony concern for women's golf to rationalize its actions and defend against the instant action.

The PGA TOUR's professed concern for the LPGA is destroyed by its track record of minimal involvement between the two organizations, a history that belies any claim of support for women's golf, and by the fact that the PGA TOUR ignored the LPGA's conclusion for how to resolve any issues stemming from Haney's May 29th broadcast. Likewise, the cultural sensitivity, made-for-litigation pretext for its actions is belied by the PGA TOUR's consistent failure to act when other individuals associated with its brand have made racist, homophobic, and generally insensitive public remarks. Further, social media tracking data shows that any minor public reaction adverse to Haney's broadcast dissipated within a matter of days, if not hours.

4824-5768-3179

b. <u>PGA TOUR's Statement</u>

After over five years broadcasting on PGA TOUR's branded radio station, during his May 29, 2019, broadcast, Haney made a series of offensive comments related to that year's upcoming U.S. Women's Open – including comments about several of the female golfers slated to participate in that major event. After senior executives at Callaway Golf informed Haney's agent of the immediate backlash on social media, Haney's agent instructed him to apologize while Haney was still on the air. At the end of the broadcast, Haney stated "I apologize if that offended people." Later that day, SiriusXM Radio, Inc. ("SiriusXM") helped Haney draft a written apology that Haney issued via Twitter that described Haney's statements as insensitive.

The public reaction to Haney's on-air comments was immediate and negative, including from several Ladies Professional Golf Association (the "LPGA") players and other prominent figures in the golf world. Major publications published scathing editorials condemning Haney's comments that associated PGA TOUR's brand with Haney's broadcast. The next day, faced with mounting negative public commentary in response to Haney's comments, PGA TOUR Commissioner Jay Monahan contacted Scott Greenstein, SiriusXM President and Chief Content Officer. Later on May 30, 2019, SiriusXM suspended Haney from broadcasting on the SiriusXM PGA TOUR Radio channel at PGA TOUR's instruction, and SiriusXM and PGA TOUR issued a joint public statement regarding Haney's suspension. At no point did Plaintiffs accuse SiriusXM of breaching any term of the contract governing their relationship. Instead, the day his suspension was announced, Haney decided he would never return to broadcasting on SiriusXM PGA TOUR Radio as long as it remained a PGA TOUR-branded station. Within days of Haney's suspension, Haney's talent agent, Jeremy Aisenberg, began negotiating a financial buyout of Plaintiffs' Letter Agreement with SiriusXM. Those negotiations culminated in Plaintiffs and SiriusXM signing a

Settlement Agreement in July of 2019 that formally cancelled Plaintiffs' Letter Agreement and discontinued Haney's show on SiriusXM.

Plaintiffs then filed this lawsuit, claiming that PGA TOUR tortiously interfered with their contractual and business relationships with SiriusXM after Haney's May 29, 2019, broadcast. Plaintiffs allege that PGA TOUR was motivated to do so by its "long-standing animus towards Haney" stemming from PGA TOUR's purported "desire to settle an old score" relating to Tiger Woods and the book Haney published in 2012 about his tenure as Woods's swing coach. Plaintiffs also allege that PGA TOUR pursued its vendetta against Haney over the years by interfering with several of Haney's business endeavors, leading up to PGA TOUR's alleged interference with Plaintiffs' relationship with SiriusXM in 2019. Indeed, Plaintiffs' allegations about PGA TOUR's prior interference with Haney's business endeavors are not the subject of this action. Moreover, instead of substantiating Plaintiffs' allegations, discovery in this case—including Plaintiffs' own records and testimony—yielded no probative, admissible evidence supporting Plaintiffs' allegations regarding prior PGA TOUR interference with Haney's business endeavors.

The record in this case demonstrates that Haney broadcast his show on a SiriusXM station emblazoned with PGA TOUR's trademark and closely associated with PGA TOUR's brand. The record also shows that PGA TOUR has indisputable rights in its intellectual property and brand's association with that station, that SiriusXM had affirmative obligations to ensure that no programming detrimental to PGA TOUR aired on that station, and that PGA TOUR was fully justified in acting to protect its financial and business interests as associated with that branded radio station. The record also shows that PGA TOUR has a genuine, strategic alliance with the LPGA, and that PGA TOUR was justified in acting to protect that relationship in response to the comments Haney made during his May 29, 2019, broadcast.

6

2. **The Basis of Federal Jurisdiction**

   The basis of federal jurisdiction is 28 U.S.C. § 1332, as the parties are diverse and the matter in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

3. **The Pleadings Raising the Issues**

   The pleadings raising the issues in this case are:

   - Plaintiffs' Complaint [ECF No. 1]

   - PGA TOUR's Answer and Affirmative Defenses [ECF No. 34]

4. **All Undisposed of Motions or Other Matters Requiring Action by the Court**

   The motions requiring action by the Court are:

   - PGA TOUR's Motion for Summary Judgment [ECF No. 82];

   - PGA TOUR's Motion to Exclude Testimony of Jeremy Aisenberg and Patrick McGee [ECF No. 80];

   - PGA TOUR's Omnibus Motion *in Limine* [ECF No. 104]

5. **Concise Statement of Uncontested Facts Which Will Require No Proof at Trial, With Reservations, if Any**

   a. Haney began broadcasting *Hank Haney Golf Radio* on the SiriusXM PGA TOUR Radio channel in or about 2013.

   b. During the relevant period, Haney broadcasted under a Talent Agreement with SiriusXM dated November 30, 2017 (the "Talent Agreement").

   c. During the May 29, 2019, broadcast of *Hank Haney Golf Radio*, Haney and his co-host, Steve Johnson, engaged in the following on-air exchange:

   JOHNSON:  This week is the 47th U.S. Women's Open, Hank.
   HANEY:    Oh it is?  I'm gonna predict a Korean.
   JOHNSON:  OK, that's a pretty safe bet.
   HANEY:    I couldn't name you six players on the LPGA Tour.  Maybe I could.  Well…I'd go with Lee.  If I didn't have to name a first name, I'd get a bunch of them right.
   JOHNSON:  We've got six Lees.

4824-5768-3179

    d.  Haney apologized on the air and later that day via Twitter.

    e.  In July of 2019, Haney and SiriusXM signed a Settlement Agreement that did not include PGA TOUR as a party.

    f.  Haney began broadcasting *The Hank Haney Podcast* with iHeartMedia, Inc. in or around the fall of 2019. *The Hank Haney Podcast* continues to the present.

**6. A Statement in Reasonable Detail of Issues of Fact Which Remain to be Litigated at Trial**

    a.  Only issues of fact identified, if any, by the Court when ruling upon PGA TOUR's Motion for Summary Judgment. (ECF 82.)

**7. A Concise Statement of Issues of Law on Which There is Agreement**

    a.  <u>General</u>

        i.  This Court has subject matter jurisdiction over this action.

        ii.  This Court has personal jurisdiction over the Parties.

        iii.  Venue is proper in this District.

**8. A Concise Statement of Issues of Law Which Remain for Determination by the Court**

    a.  <u>Plaintiffs' Statement</u>

Plaintiffs have no pending motions but will be filing an Opposition to Defendant's *in limine* motions and respectfully submits, *inter alia*, that Plaintiffs have a right to offer at trial evidence showing the pretextual nature of the PGA TOUR's manufactured-for-litigation excuses for accomplishing without any legal right or basis the termination of Plaintiffs' contractual agreement with Sirius XM. Such evidence includes evidence of the relationship between the PGA TOUR and LPGA, including its agreement by which the PGA TOUR essentially has stripped away the LPGA's financial viability, evidence of the PGA TOUR's regressive treatment of women and minorities, and the PGA TOUR's prior handling of similar statements by others within the professional golf industry in contrast to its reaction to Haney's statements at issue in this litigation. Indeed, motive most frequently must be proved by circumstantial evidence. Regarding the

agreement between Plaintiffs and Sirius XM, Plaintiffs have the right to offer into evidence the customary meaning in the media and broadcasting industry of terms used in that agreement.

b. <u>PGA TOUR's Statement</u>

As set forth in PGA TOUR's Motion to Exclude Testimony of Jeremy Aisenberg and Patrick McGee [ECF No. 80]: The Court must determine whether Plaintiffs' proffered experts, Jeremy Aisenberg and Patrick McGee: (1) are qualified to provide expert testimony on Plaintiffs' claimed projected financial damages; (2) based their proposed expert testimony on Plaintiffs' claimed projected financial damages on reliable methodology; and (3) whether Aisenberg's and McGee's other proffered opinions should be admitted at trial.

As set forth in PGA TOUR's Motion for Summary Judgment [ECF No. 82]: The Court must determine whether PGA TOUR is entitled to summary judgment on Plaintiffs' tortious interference claims based on whether Plaintiffs have provided sufficient evidence to demonstrate that PGA TOUR's alleged interference in Plaintiffs' contract and relationship with SiriusXM was unjustified as a matter of law.

As set forth in PGA TOUR's Omnibus Motion in Limine [ECF No. 104]: The Court must determine whether to preclude Plaintiffs from introducing or attempting to introduce the following categories of evidence at trial:

(1) testimony regarding the legal effect or meaning of the License Agreement between PGA TOUR and Sirius XM;

(2) testimony or documents regarding the social media sentiment analyses referenced as part of Jeremy Aisenberg's "expert" testimony and in Plaintiffs' opposition to PGA TOUR's Motion to Exclude Plaintiffs' Experts' Testimony;

(3) testimony or references to various topics of testimony of Plaintiffs' purported expert witnesses, Jeremy Aisenberg and Patrick McGee;

(4) hearsay testimony from Plaintiffs regarding: (i) PGA TOUR's alleged interference with sales of Haney's book, *The Big Miss*; (ii) PGA TOUR's alleged pressure on The Golf Channel to discontinue Haney's show, "The Haney Project;" and (iii) PGA TOUR's alleged efforts to influence Avis that allegedly resulted in Avis cancelling an unspecified "program" with Haney;

(5) testimony or documents regarding distinguishable and irrelevant incidents involving non-parties Kelly Tilghman, Kevin Kisner, and Justin Thomas;

(6) testimony or references to the size of PGA TOUR's counsels' law firm;

(7) testimony or references regarding the effect of the jury's verdict on the parties; and

(8) "Golden Rule" testimony or references.

**9. Each Party's Numbered List of Trial Exhibits with Objections**

PGA TOUR's list of trial exhibits with Plaintiffs' objections is submitted as **Exhibit A.**

On May 28, 2021, Plaintiffs filed their Unopposed Motion for Extension of Time to Modify the Court's Second Amended Scheduling Order (ECF No. 103), which included a request that the Court extend the deadline for the parties to submit their Joint Pre-trial Stipulation, proposed jury instructions and verdict form, as well as all motions *in limine*. As of the time of this filing, the Court has not yet ruled on that motion. Prior to filing this Joint Pre-Trial Stipulation, Plaintiffs' counsel advised PGA TOUR's counsel that Plaintiffs intended to file their trial exhibit list, with PGA TOUR's objections, according to the proposed revised schedule included in Plaintiffs' motion. PGA TOUR therefore reserves, and does not waive, any of its rights to object to any of Plaintiffs' trial exhibits in advance of the trial in this matter.

**10. Each Party's Numbered List of Trial Witnesses**

Plaintiffs' list of witnesses is submitted as **Exhibit B.**

PGA TOUR's list of witnesses is submitted as **Exhibit C.**

**11. Estimated Trial Time**

The Parties estimate that trial can be completed in 5 days.

**12. Maximum Amount of Properly Allowable Attorneys' Fees.**

Plaintiffs' Statement:  Plaintiffs dispute that PGA TOUR is entitled to attorneys' fees.

PGA TOUR's Statement:   On September 18, 2020, PGA TOUR served proposals for settlement on each of the Plaintiffs pursuant to Fla. Stat. § 768.79.  Plaintiffs rejected each respective proposal for settlement and thus PGA TOUR is entitled to reasonable attorneys' fees incurred on and after September 18, 2020.

Dated: May 31, 2021                                          Respectfully submitted,

| | |
|---|---|
| */s/ Peter R. Ginsberg*_____<br>MICHELMAN & ROBINSON, LLP<br>Peter R. Ginsberg (*admitted pro hac vice*)<br>prginsberg@mrllp.com<br>800 Third Avenue, 24th Floor<br>New York, NY 10022<br>Telephone: (212) 730-7700<br>Facsimile: (212) 730-7725<br><br>RICE PUGATCH ROBINSON STORFER & COHEN PLLC<br>Arthur H. Rice<br>Florida Bar No. 224723<br>arice@rprslaw.com<br>Riley W. Cirulnick<br>Florida Bar No. 333270<br>rcirulnick@rprslaw.com<br>101 NE 3rd Ave., Suite 1800<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 462-8000<br>Facsimile: (954) 462-4300<br><br>*Counsel for Plaintiffs Hank Haney and Hank Haney Media, LLC* | */s/Angelica L. Novick*_____<br>FOLEY & LARDNER LLP<br>Michael Gay<br>Florida Bar No. 938191<br>mgay@foley.com<br>111 North Orange Avenue, Suite 1800<br>Orlando, FL 32801<br>Telephone: (407) 423-7656<br>Facsimile: (407) 648-1743<br><br>Angelica L. Novick<br>Florida Bar No. 105069<br>anovick@foley.com<br>2 South Biscayne Boulevard, Suite 1900<br>Miami, FL 33131<br>Telephone: (305) 482-8400<br>Facsimile: (305) 482-8600<br><br>Kelly S. Milliron<br>Florida Bar No. 1018917<br>kmilliron@foley.com<br>1 Independent Drive, Suite 1300<br>Jacksonville, FL 32202<br>Telephone: (904) 359-2000<br>Facsimile: (904) 359-8700<br><br>*Counsel for Defendant PGA TOUR, Inc.* |