UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-CV-63108-RAR

HANK HANEY and
HANK HANEY MEDIA, LLC,

      Plaintiffs,

vs.

PGA TOUR, INC.,

      Defendant.
_____/

## DEFENDANT PGA TOUR, INC.'S REPLY IN SUPPORT OF ITS OMNIBUS MOTION *IN LIMINE*

Defendant PGA TOUR, Inc. ("PGA TOUR"), through its undersigned counsel hereby files its reply in support of its Omnibus Motion *In Limine* (ECF No. 104) ("PGA TOUR's Motion") for entry of an order precluding Plaintiffs Hank Haney ("Haney") and Hank Haney Media, LLC ("HHM") (collectively, "Plaintiffs") from introducing or attempting to introduce certain categories of evidence at trial. In support thereof, PGA TOUR states as follows:

## ARGUMENT

As has become their custom in this case, Plaintiffs devote nearly five pages of their Response in Opposition ("Plaintiffs' Response") to trying to argue the merits of their case under the guise of providing "factual background." Like Plaintiffs' case, though, Plaintiffs' "factual background" is short on provable facts supported by admissible evidence and long on unsupported hyperbole. Instead of engaging in the same exercise, PGA TOUR elects again to address the matter at hand – the misguided arguments Plaintiffs make actually pertaining to PGA TOUR's Motion.

1

**A. Plaintiffs Admit Their Intention to Offer "Expert" Testimony Regarding "Terms of Art" to Characterize PGA TOUR's Rights in its Contractual Relationship with SiriusXM, Which Should be Excluded.**

Plaintiffs claim that PGA TOUR mischaracterizes the evidence that Plaintiffs intend to offer through their "experts" regarding PGA TOUR's relationship with SiriusXM Radio, Inc. ("SiriusXM"), which is governed by a License Agreement (the "License Agreement"). Plaintiffs claim that they do not intend to offer their "experts'" testimony to interpret PGA TOUR's and SiriusXM's respective rights under the License Agreement. Instead, Plaintiffs assert they intend to offer Aisenberg's and McGee's testimony to educate the jury about certain "terms of art" in the "broadcasting, media rights and talent representation industries and how those terms are used in the context of [PGA TOUR's and SiriusXM's] relationship." (Plaintiffs' Opp., p. 7.)

The "terms of art" that Plaintiffs intend to offer Aisenberg's and McGee's "expert" testimony on are "programming" and "content." (*Id.* p. 8.) Of these "terms of art," the word "programming" is a defined term in the License Agreement, while "content" is not. As PGA TOUR stated in its Motion, Aisenberg testified during his expert deposition that his "expert" opinion, based on his review of the License Agreement, is: "[t]hat the PGA TOUR has the ability to approve the programming that is added to the schedule for SiriusXM PGA T[OUR] Radio," and "the [L]icense [A]greement specifically references programming. It does not reference content." (PGA TOUR's Motion, p. 5, and Ex. B, Aisenberg Dep., March 31, 2021, pp. 91:24-92:15.) Regardless of how Plaintiffs attempt to parse their argument, Plaintiffs plainly intend to offer Aisenberg's and McGee's "expert" testimony on this point for one reason — to submit to the jury, under the auspices of "expertise," that because the License Agreement refers to "programming" and not "content," PGA TOUR has no rights with respect to the content of shows that air on the

2

PGA TOUR-branded station on SiriusXM.[1]  Such testimony is, at its core, contract interpretation that is inappropriate for expert testimony, and would serve only to mislead the jury on a point reserved for the Court's instruction.  *See Ramjeawan v. Bank of America Corp.*, No. 09-20963-CIV, 2010 WL 1645097, at *1 (S.D. Fla. Apr 21, 2010) (precluding opinion testimony offered to interpret an agreement at issue in the case because "[e]xpert opinion testimony regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible.").  Plaintiffs should be precluded from offering Aisenberg's and McGee's "expert" testimony to interpret or construe the meaning and effect of any aspect of the License Agreement between PGA TOUR and SiriusXM.

**B. Documents and Testimony Regarding the Social Media Sentiment Analyses are Inadmissible and Should be Excluded from Trial.**

PGA TOUR does not contest that the strong public response to Haney's comments during his May 29, 2019, Broadcast on SiriusXM PGA TOUR Radio is relevant to the issues in this case, including to underscore that PGA TOUR's actions consistent with its rights under the License Agreement and to protect its brand were justified and non-actionable.  However, relevance is only one aspect of whether evidence is admissible at trial.  Despite Plaintiffs' arguments to the contrary, documents and testimony regarding the social media sentiment analyses are inadmissible hearsay, and otherwise incapable of being sufficiently authenticated for use at trial.  The Court should preclude Plaintiffs from attempting to introduce them during trial.

Plaintiffs' attempt to fit the social media sentiment analyses into the business records exception provided under Fed. R. Evid. 803(6) is unavailing because none of the social media analyses Plaintiffs have produced to date meet the requirements of the exception.  Fed. R. Evid.

---

[1] It bears noting that "Programming," as defined in the License Agreement, includes "all programming distributed on [SiriusXM PGA TOUR Radio]…," with no indication that PGA TOUR and Sirius XM contemplated a distinction between "programming" and "content" of programming.

803(6) excludes records of a regularly conducted activity from the rule against hearsay *only* when such records: (a) are "made at or near the time by – or from information transmitted by – someone with knowledge;" (b) are "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (c) are made as part of "a regular practice of that activity;" (d) are supported by testimony from the custodian or another qualified witness or an appropriate certification; and (e) are not shown by the opponent of such records to be based on information, or to have been prepared in a way or under circumstances that lack trustworthiness. Fed. R. Evid. 803(6).

First and foremost, the social media sentiment analyses Plaintiffs have offered to date are, by definition, not business records because they were prepared for this litigation. *See ADT LLC & ADT U.S. Holdings, Inc. v. Alarm Protection LLC, et al.*, No. 9:15-CV-80073-ROSENBERG/HOPKINS, 2017 WL 1881957, at *1 (S.D. Fla. May 9, 2017) (noting that the "business records exception" to the rule against hearsay only applies if the person furnishing the information or document is "acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, in the regular course of business.") (internal quotations omitted). Reports and documents created in anticipation of or for use in litigation are generally not considered business records that are admissible under Fed. R. Evid. 803(6). *See Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1161 (11th Cir. 2004) (granting a new trial after holding that an exhibit was improperly introduced under Fed. R. Evid. 803(6) because it was prepared during and for use in litigation, and was a compilation of inadmissible hearsay statements).

Plaintiffs' characterization of the social media sentiment analyses as "data compilations" that Aisenberg and McGee "regularly maintain and employ…and incorporate…into their own business records for purposes of servicing their clients" does not cure that the analyses were not

4825-4931-8639

prepared in the ordinary course of <u>Plaintiffs'</u> business, and are therefore not business records. *Lebron v. Wilkins*, 990 F. Supp. 2d 1280, 1296-97 (M.D. Fla. 2013), a case Plaintiffs cite in support of this argument, is illustrative. The district court in *Lebron* determined that a witness's declaration and charts summarizing data were not admissible business records under Fed. R. Evid. 803(6) in part because they were "created specifically for [the] litigation." *Id.* at 1297. Plaintiffs, through Aisenberg, McGee, or otherwise, have only created and offered the social media sentiment analyses for purposes of this litigation: (1) in support of Aisenberg's and McGee's expert testimony; (2) to try to undermine PGA TOUR's rebuttal expert's testimony; and (3) presumably, to try to mislead the jury into concluding that the negative public perception of Haney would have neutralized shortly after his May 29, 2019, Broadcast. Plaintiffs should not be permitted to do so.

Plaintiffs also cannot avail themselves of Rule 803(6) to admit the social media sentiment analyses at trial because Plaintiffs never produced the data underlying those analyses, including what sources Plaintiffs excluded from the data reflected in each analysis. *See U.S. v. Arias-Izquierdo*, 449 F.3d 1168, 1183-84 (11th Cir. 2006) (stating "Rule 803(6) requires that both the underlying records and the report summarizing those records be prepared and maintained for business purposes in the ordinary course of business," and that both must be provided to the other parties to the litigation). It would be inappropriate for the Court to permit Plaintiffs to introduce the social media sentiment analyses at trial based on Plaintiffs' reassurance that "Aisenberg will…testify at trial regarding how these analyses are created and relied upon and how Aisenberg and [his employer] would…regularly use the social media analyses…" (Plaintiffs' Opp. p. 10.) That is not the standard under Fed. R. Evid. 803(6). The social media sentiment analyses are plainly hearsay (and double-hearsay to the extent they are based on hearsay statements), and

Plaintiffs' inability to demonstrate how they meet a hearsay exception militates in favor of the Court precluding Plaintiffs from introducing them at trial.

### C. Plaintiffs' "Experts" Should Not be Permitted to Provide Unreliable and Speculative Testimony at Trial.

Consistent with Plaintiffs' *modus operandi* in this case, Plaintiffs persist in trying to shift their burden to establish the admissibility of their "experts'" testimony onto PGA TOUR. "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1996) (citing *Daubert v. Merrell Dow. Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993)). Plaintiffs have argued (inconsistently) that, because Aisenberg and McGee are allegedly "hybrid fact-expert" witnesses, they were not required to disclose details regarding the bases for their "expert opinions," while simultaneously arguing that Aisenberg and McGee should be permitted to testify to unsubstantiated, unverified, and untested "expert opinions" at trial, subject only to cross-examination. The Court should not countenance these arguments, and for this reason and the reasons argued in PGA TOUR's Motion to Exclude (ECF No. 80) the Court should preclude Aisenberg's and McGee's testimony on topics including: (1) "SiriusXM's business prior to Plaintiffs joining the outlet and the impact of Haney's radio show on SiriusXM's financial condition;" (2) Aisenberg's purported "analyses" of "SiriusXM's monetization," "Haney's monetization," and the "immediate and long-term financial and professional damage sustained by Plaintiffs;" (3) "specific data" and "reports from advertisers" reflecting the financial and listenership impact on SiriusXM in reaction to the May 29, 2019, Broadcast if Haney had not left his radio show on SiriusXM PGA TOUR Radio; and (4) whether the comments Haney made during the May 29, 2019, Broadcast would have had a negative effect on the PGA TOUR's brand.

4825-4931-8639

**D. Plaintiffs' Proffered Testimony Regarding PGA TOUR's Alleged Prior Interference with Haney's Business Endeavors is Based Only on Inadmissible Hearsay and Should be Excluded at Trial.**

Plaintiffs acknowledge that Haney's and Aisenberg's anticipated testimony regarding PGA TOUR's alleged pressure on "PGA Tour Superstores'" and "PGA Tour Shops'" to cancel orders for Haney's book "The Big Miss" constitute hearsay (and also hearsay-within-hearsay).[2] Plaintiffs attempt to argue, however, that Aisenberg's hearsay testimony (allegedly based on Aisenberg's "firsthand knowledge"), in particular, should be allowed at trial as "statements against interest" by declarants who are unavailable. The Court should reject Plaintiffs' speculation-riddled arguments in support of admitting this testimony at trial.

First, Plaintiffs fail to establish that the hearsay declarants, which Plaintiffs identify as Tina Constable, Rick Horgan, and Tammy Blake of Crown Archetype at Penguin Random House, are unavailable as defined under Fed. R. Evid. 804(a). To demonstrate unavailability under Fed. R. Evid. 804(a), Plaintiffs must show that they made good faith efforts to procure the declarants' testimony, including the declarants' deposition testimony if the declarants may be unavailable for trial. *See In re Chiquita Brands Int'l, Inc.*, No. 08-01916-MD-MARRA, 2019 WL 11497632, at *26-27 (S.D. Fla. Sept. 5, 2019) (ruling that hearsay was inadmissible because the plaintiffs had an opportunity to procure the declarant's deposition testimony yet failed to do so). It is Plaintiffs' burden to establish the declarants' unavailability. *See, e.g., Jones v. Discount Auto Parts, LLC*, No. 6:16-cv-138-Orl-37KRS, 2017 WL 1396477, at *4 n.4 (M.D. Fla. Apr. 19, 2017) (ruling

---

[2] Plaintiffs do not respond to or in any way address PGA TOUR's arguments regarding anticipated testimony related to the PGA TOUR's alleged involvement with the Golf Channel's decision to discontinue "The Haney Project" in 2013, or regarding the PGA TOUR's alleged involvement in Avis's decision not to pursue an unspecified "program" with Haney. As such, Plaintiffs have conceded those arguments, and Plaintiffs should be precluded from introducing hearsay testimony on these topics, as specified in PGA TOUR's Motion. (*See* PGA TOUR's Motion, ECF No. 104 pp. 11-13.)

7

hearsay evidence inadmissible as statements against interest under Fed. R. Evid. 804 because the plaintiff failed to offer any evidence establishing the declarant was unavailable).

Here, Plaintiffs argue only that "[n]otwithstanding their best efforts, Plaintiffs have been unable to locate the individuals from Penguin Random House who made these statements and have not been able to secure their testimony." (Plaintiffs' Opp. p. 17.)  Plaintiffs do not offer any further detail on the efforts they made to locate these declarants, or to secure this evidence from other sources.  Plaintiffs have thus failed to establish the declarants are unavailable. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F. Supp. 1190, 1256 (E.D. Pa. 1980) ("Since the plaintiffs made no effort to depose any of the declarants, none of the declarants…are unavailable under [Rule] 804(a)(5) for purposes of the hearsay exception."); *compare U.S. v. Samaniego*, 345 F.3d 1280, 1283-84 (11th Cir. 2003) (holding that hearsay evidence was admissible because (1) defendant used significant efforts, including seeking the help of declarant's family, to try to persuade declarant to travel for trial, and (2) the statement (an apology for a crime) clearly qualified as a statement against interest).[3]

Plaintiffs further claim that Aisenberg's hearsay testimony about the Crown Archetype representatives' statements is admissible under Fed. R. Evid. 804(b)(3) because Aisenberg will testify to statements the representatives made against their interest. (Plaintiffs' Opp. p. 17.)  A

---

[3] Both PGA TOUR and Plaintiffs served third-party subpoenas during discovery.  Plaintiffs, in particular, served third-party subpoenas on both PGA Tour Superstore and The Paradies Shops, LLC d/b/a PGA Tour Shops ("PGA Tour Shops").  In response to Plaintiffs' subpoena, PGA Tour Shops produced documents including an email indicating that an individual affiliated with PGA Tour Shops did not "recall any discussion about not selling ["The Big Miss"]."  A true and correct copy of that email is attached hereto as **Exhibit A,** which undersigned counsel obtained consent from PGA Tour Shops' counsel to file publicly with some personal information redacted.  Plaintiffs should not be permitted to avail themselves of the exception under Fed. R. Evid. 804(a) to offer self-serving, layered hearsay testimony, especially when based on the third-party discovery Plaintiffs did obtain, Aisenberg's testimony is especially questionable.

4825-4931-8639

statement against interest is made when it is "so contrary to the declarant's proprietary or pecuniary interest or ha[s] so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability…and is supported by corroborating circumstances or trustworthiness." Fed. R. Evid. 804(b)(3)(A)-(B); *see also Macuba v. Deboer*, 193 F.3d 1316, 1325 n. 19 (11th Cir. 1999) (noting that declarant's statements that defendants had a "hit list" of individuals, including plaintiff, that they wanted fired were not admissible as statements against interest because they "hardly subjected [the declarant] to civil or criminal liability"). Whether third-party booksellers felt they had to cancel orders for "The Big Miss" under the circumstances Plaintiffs allege, even if such circumstances were supported by the evidence (which they are not), does not constitute a statement against the declarants' interest under Fed. R. Evid. 804(b)(3).

Even if the Court is willing to accept that the Crown Archetype representatives are unavailable (which they were not), and that their alleged statements were made against their pecuniary interest (which they were not), Plaintiffs make no argument that the alleged statements from representatives of PGA Tour Superstores and PGA Tour Shops to the Crown Archetype representatives fall within any hearsay exception. As such PGA TOUR's Motion should be granted on this point, too, and Plaintiffs' testimony excluded at trial accordingly.

**E. Plaintiffs Admit They Seek to Offer Evidence of What They Deem "More Offensive" Comments by "Others in the Golf Industry," Which Will Unfairly Prejudice PGA TOUR at Trial.**

Plaintiffs should be precluded from introducing testimony and evidence at trial regarding: (1) a statement referring to Tiger Woods that Kelly Tilghman made during a Golf Channel broadcast <u>more than 10 years</u> before Haney's May 29, 2019, comments; (2) a statement PGA TOUR player Kevin Kisner made on his <u>personal</u> Twitter account related to the COVID-19 pandemic more than a year after Haney's May 29, 2019, comments; and (3) an exclamation PGA

9

TOUR player Justin Thomas made on a hot microphone during a tournament nearly two years after Haney's May 29, 2019, comments. In addition to being so distinguishable from the circumstances surrounding Haney's May 29, 2019, comments as to render them irrelevant for trial, Plaintiffs characterize these statements as "significantly more offensive" than Haney's comments. Plaintiffs' characterization highlights Plaintiffs' intention to offer this evidence solely to inflame the jury and to unfairly prejudice PGA TOUR at trial. Plaintiffs do not engage at all with the significant distinctions between the circumstances surrounding Haney's May 29, 2019, comments on a <u>PGA TOUR-branded</u> radio station and the circumstances surrounding each of these purportedly "analogous" incidents. Plaintiffs instead conclusorily and inappropriately extrapolate from their self-serving characterizations of each of those incidents that because PGA TOUR allegedly responded differently to <u>different circumstances</u>, somehow its actions after Haney's May 29, 2019, Broadcast were unjustified. As such, in addition to seeking to unfairly inflame the jury, Plaintiffs also seek to offer testimony and evidence regarding the irrelevant circumstances to confuse the issues in this case, and thereby, confuse and mislead the jury. The Court should, therefore, exclude this evidence under Fed. R. Evid. 403 in advance of trial.

**F. Plaintiffs Have Stipulated to Refrain from Offering Evidence or Testimony Regarding the Remaining Categories in PGA TOUR's Motion.**

Plaintiffs have agreed, either overtly (in the case of Golden Rule references), or indirectly by omission, not to: (1) make Golden Rule references; (2) make reference to the size of PGA TOUR's counsels' law firm; or (3) make reference to the effect of the jury's verdict.

## CONCLUSION

For the reasons discussed above, and in PGA TOUR's Motion, PGA TOUR respectfully requests that the Court preclude Plaintiffs from introducing evidence on or references to the above topics at trial.

<table>
<tr><td>Dated: June 21, 2021</td><td>Respectfully submitted,<br><br>/s/ Angelica L. Novick<br><br>FOLEY & LARDNER LLP<br>Michael Gay<br>Florida Bar No. 938191<br>mgay@foley.com<br>111 North Orange Avenue, Suite 1800<br>Orlando, FL 32801<br>Telephone: (407) 423-7656<br>Facsimile: (407) 648-1743<br><br>Angelica L. Novick<br>Florida Bar No. 105069<br>anovick@foley.com<br>Foley & Lardner LLP<br>2 South Biscayne Boulevard, Suite 1900<br>Miami, FL 33131-1832<br>Telephone: (305) 482-8400<br>Facsimile: (305) 482-8600<br><br>Kelly S. Milliron<br>Florida Bar No. 1018917<br>kmilliron@foley.com<br>Foley & Lardner LLP<br>1 Independent Drive, Suite 1300<br>Jacksonville, FL 32202<br>Telephone: (904) 359-2000<br>Facsimile: (904) 359-8700<br><br>*Counsel for Defendant, PGA TOUR, Inc.*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 21, 2021, I electronically served the foregoing on all counsel of record via the e-mail addresses listed on the attached Service List.

/s/ Angelica L. Novick
Angelica L. Novick

11

4825-4931-8639

<u>SERVICE LIST</u>

Hank Haney and Hank Haney Media, LLC v. PGA TOUR, Inc.

<u>Case No. 0:19-cv-63108-rar</u>

**Attorneys for Plaintiffs:**

**Riley W. Cirulnick**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue
Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
Fax: 954-462-4300
rcirulnick@rprslaw.com

**Peter R. Ginsberg**
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, NY 10022
(212) 730-7700
pginsberg@mrllp.com

**Arthur Halsey Rice**
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3 Avenue
Suite 1800
Fort Lauderdale, FL 33301
305-379-3121
Fax: 305-379-4119
arice.ecf@rprslaw.com
arice@rprslaw.com

4825-4931-8639